**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TONG XIONG,

*Petitioner-Appellant,*

v.

TOM FELKER, Warden; ATTORNEY
GENERAL FOR THE STATE OF
CALIFORNIA,

*Respondents-Appellees.*

No. 09-16830

D.C. No.
2:07-cv-02689-
JAM-CHS

OPINION

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Submitted March 12, 2012*
San Francisco, California

Filed June 5, 2012

Before: John T. Noonan, M. Margaret McKeown, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr., Circuit Judge;
Dissent by Judge Noonan

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## COUNSEL

Stephanie M. Adraktas, Berkeley, California, for the petitioner-appellant.

Kamala D. Harris, Michael P. Farrell, Tami M. Krenzin, Kenneth N. Sokoler, California Department of Justice, Sacramento, California, for the respondents-appellees.

## OPINION

M. SMITH, Circuit Judge:

This case presents three certified issues which we review under the Anti-terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d): (1) whether Petitioner-Appellant Tong Xiong's (Xiong) federal due process rights were violated when the trial court construed California law to allow jurors to refuse to discuss their deliberations and alleged misconduct after trial; (2) whether jury misconduct involving unsolicited observations of some jurors deprived

Xiong of his right to an impartial jury; and (3) whether Xiong received ineffective assistance of counsel due to counsel's elicitation of unfavorable expert testimony on cross-examination.

Following an initial mistrial, Xiong was convicted of second degree murder with aggravating enhancements. Xiong received a sentence of 40 years to life, with a firearm enhancement. Xiong appealed his conviction to the California Court of Appeal on multiple grounds, including insufficient evidence, ineffective assistance of counsel, and jury misconduct. The Court of Appeal vacated a single sentence on the firearm enhancement, but affirmed on all other counts, thereby reducing Xiong's sentence to 15 years to life. Xiong subsequently filed a habeas petition in the United States District Court for the Eastern District of California, pursuant to 28 U.S.C. § 2254(d).

Under the facts of this case, as controlled by the Anti-terrorism and Effective Death Penalty Act (AEPDA), 28 U.S.C. § 2254(d), we may only reverse the state court's conviction if no fair minded jurist could conclude that the petitioner's clearly established constitutional rights, as established by the Supreme Court of the United States, were not violated. We hold that the California Court of Appeal's decision was not an unreasonable application of Xiong's Sixth and Fourteenth Amendment rights under AEDPA's stringent standards, and we affirm the decision of the district court denying Xiong's petition for habeas corpus relief.

## FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

Xiong and two co-defendants were charged with murder, discharging a firearm at an inhabited dwelling, discharging a firearm from a motor vehicle at a person not in the vehicle, and discharging a firearm from a motor vehicle. Additional enhancements were also sought, including several firearm

enhancements, a criminal street gang enhancement, and the special circumstance of intentional first degree murder perpetrated by discharging a firearm from a motor vehicle. The state trial court declared the first trial a mistrial after the jury was unable to reach a verdict. Xiong's conviction on retrial gave rise to the petition for a writ of habeas corpus at issue in this appeal.

Xiong's ineffective assistance of counsel claim arises out of an incident during the cross-examination of one of the prosecution's expert witnesses. During cross-examination, counsel elicited unfavorable testimony from the prosecution's gang expert, to the effect that individuals in a car with a "gang mentality," present during the commission of a crime, would be promoting gang activity solely by their presence. Specifically, the prosecution's gang expert testified that while in that car, "whatever happens and what[ever] they encounter, they are all down for [it]. That's how gangsters work."

Xiong's due process, fair trial and impartial jury claims arise out of the jury's consideration of extrinsic evidence relating to the testimony of his brother, Fue (Fue). When called by the prosecution as a hostile witness, Fue testified on direct examination that he could not remember many answers to questions about Xiong's offenses and alleged gang affiliations that he had previously given when interviewed by the police. He was impeached by the prosecution, which played a videotape of the police interview in which a clearly lucid Fue stated that his brother had shot someone. On cross-examination, Fue testified that he had been "knocked out" before, had memory problems, and was easily confused. Fue testified that he could not even recollect testimony he gave during his direct and cross-examination, and did not remember reading the transcript of his police interview that morning during his testimony. Fue also testified that he could not identify the President of the United States or the Governor of California.

During the course of Fue's two days of testimony, Jurors Three, Nine and Ten, in passing, observed Fue talking in a hallway on his cell phone in a clear and coherent manner. In a declaration, Juror Nine stated that Fue's out-of-court demeanor was discussed by the jury during its deliberation, but later corrected the declaration to state that this information was only discussed after the jury had already found Fue not credible based on the impeachment evidence presented.

Xiong was ultimately found guilty of all counts, including second degree murder. The jury at his retrial also found that Xiong acted as a principal in the firearm offense and that he committed the offenses for the benefit of a criminal street gang. However, the jury rejected an additional enhancement for Xiong's personal use of a firearm. Ultimately, Xiong was convicted and sentenced to a term of 15 years to life for the murder, as well as a consecutive term of 25 years to life for the firearm enhancement. Sentences on the remaining counts were stayed, for a total sentence of 40 years to life.

After the jury rendered the verdict and was discharged, Xiong's attorney learned of the jurors' observations of Fue outside of the courtroom. Xiong's counsel requested that the court release juror contact information so that he could investigate the matter. On October 22, 2004, the trial court found that Xiong had shown good cause for disclosure of the jurors' contact information. However, the court indicated that it would contact the jurors first, and if the jurors did not want to be heard about the matter, then the law entitled them to decline to discuss the proceedings. In the following hearing, the court informed the parties that it had contacted the jurors in writing about the defense's request for contact information and that it had also informed the jurors that if they did not respond, they would be treated as if they did not wish to be contacted. Ultimately, ten of the twelve jurors responded, three of whom ultimately indicated they didn't want to be contacted in the future. The remaining seven jurors provided their contact information.

On December 14, 2004 Xiong filed a motion for a new trial on the ground of jury misconduct. Xiong's motion included declarations from Jurors 5, 9 and 10, discussing the jurors' observations of Fue in the hallway. The court held a hearing and subsequently denied Xiong's motion on the basis that Xiong suffered neither prejudice nor actual bias from the jury's exposure to the extrinsic evidence.

Xiong appealed, challenging the sufficiency of the evidence of his conviction, the trial court's refusal to require jurors to discuss their deliberations with the defense upon good cause, and the jury's consideration of the extraneous evidence. The California Court of Appeal reversed the criminal street gang and firearm use enhancements for insufficient evidence, but affirmed the judgment on all other grounds. Xiong's sentence was reduced to 15 years to life.

Xiong filed a petition for writ of habeas corpus in the district court on the grounds of ineffective assistance of counsel and jury misconduct. A magistrate judge filed findings and recommendations denying both claims. Subsequently, the district court adopted the magistrate judge's findings and recommendations in their entirety. Xiong timely appealed.

## STANDARD OF REVIEW

We review the district court's denial of Xiong's habeas petition de novo. *Yee v. Duncan*, 463 F.3d 893, 897 (9th Cir. 2006). Under AEDPA, we may not grant his petition "unless the adjudication of the claim—(1) resulted in a decision that *was contrary to*, or involved an *unreasonable application of*, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (emphasis added); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor,* 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d

1223, 1229 (9th Cir. 2001). "Clearly established federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

Under AEDPA's first clause regarding questions of law under section 2254(d)(1), the "contrary to" and "unreasonable application" analyses are distinct. 28 U.S.C. § 2254(d)(1). We may grant a federal writ of habeas corpus under the "contrary to" clause only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides the case differently than the Supreme Court on a set of "materially indistinguishable" facts. *Williams*, 529 U.S. at 410. We may grant relief under the "unreasonable application" clause only if the state court correctly identifies the governing legal principle but unreasonably applies it to the particular facts of the case. *Id*. We look to the state court's "*decision*, as opposed to its reasoning," to determine whether it was an "unreasonable application" of clearly established Supreme Court precedent. *Merced v. McGrath*, 426 F.3d 1076, 1081 (9th Cir. 2005) (emphasis added). It is not enough for us to determine, in our independent judgment, that the state court's decision was incorrect, or even erroneous. *Williams*, 529 U.S. at 410. Our inquiry is strictly limited to whether the state court's application of clearly established Supreme Court precedent in its final decision was "objectively unreasonable." *Id.*

AEDPA's second clause governs basic factual determinations arrived at in light of all the evidence in state court proceedings. 22 U.S.C. § 2254(d). We may only grant relief for factual findings that are "objectively unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 1007-08 (9th Cir. 2004). Factual findings are objectively unreasonable if they are unsupported by sufficient evidence in the state court record. *Id*. However, mixed questions of law and fact, including the prejudice determinations in jury misconduct and ineffective assistance of counsel petitions, are generally reviewed under section

2254(d)(1), not section 2254(d)(2). *See Caliendo v. Warden of Cal. Men's Colony*, 365 F.3d 691, 693-94 (9th Cir. 2004) (en banc) (determination of prejudice in juror misconduct case was mixed question of law and fact), *Strickland*, 466 U.S. at 698 (prejudice component of ineffective assistance claim was mixed question of law and fact); *see also Davis v. Woodford*, 384 F.3d 628, 637 (9th Cir. 2004) (mixed questions of law are evaluated under § 2254(d)(1)).

## ANALYSIS

### I.  Jury Misconduct Claim

There is no dispute that juror misconduct occurred when some jurors considered, and later discussed, Fue's conduct in the courtroom hallway. The issues here are (1) whether Xiong's clearly established right to a fair trial was violated when the trial court refused to allow his attorney to directly contact jurors regarding the juror misconduct after those jurors indicated they were unwilling to discuss the case; and (2) whether Xiong's clearly established right to a fair trial and impartial jury was violated by the jury's consideration of extrinsic evidence. We hold that the California Court of Appeal did not unreasonably apply the relevant legal principles set forth by the Supreme Court under the Sixth and Fourteenth Amendments when it denied Xiong's requests to investigate the juror misconduct, and when it found no prejudice to Xiong.

### A.  The Scope of the Jury Misconduct Inquiry did not Violate Xiong's Right to Due Process.

Xiong contends that the trial court deprived him of his due process rights by informing the jurors after trial that they were not obligated to speak with the defense in violation of his right to a fair trial and an impartial jury. Specifically, Xiong argues that the trial court erred by allowing jurors to refuse to discuss their deliberations once he had established good cause

for the release of their contact information pursuant to California Code of Civil Procedure sections 206 and 237.

[1] First, we hold that Xiong's claim regarding the post-trial rights of jurors is procedurally defaulted.[1] Under the procedural default doctrine, federal courts will not review a question of federal law previously decided by a state court if the state court's decision rests on a state law ground that is independent of federal law and adequate to support judgement. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). A state procedural default is independent unless it appears "to rest primarily on federal law or appears to be interwoven with federal law." *Id.* at 734. A state procedural default is adequate if it is " 'firmly established and regularly followed' by the time as of which it is to be applied." *Ford v. Georgia*, 498 U.S. 411, 424 (1991). The petitioner may only avoid default if he can establish cause and prejudice, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

[2] Although he did not object at trial, Xiong raised his claim that the trial court deprived him of due process by informing the former jurors that they were not required to speak with the defense during its post-verdict investigation to the California Supreme Court. The California Supreme Court denied his petition without comment. "Looking through" to the last reasoned decision by a state court, the California Court of Appeal held, in part, that Xiong had forfeited his claim by failing to object at trial. *Ylst v. Nunnemaker*, 501 U.S. 797, 804, n.3 (1991). Accordingly, because Xiong failed to object to the court's post-trial investigation of the juror

---

[1]Even if Xiong's claim were not procedurally defaulted, it would be barred by the lack of controlling, clearly established Supreme Court Authority, under § 2254(d) and under the "new rule" doctrine of *Teague v. Lane*. 498 U.S. 288, 299-301, 310 (1989) (prohibiting the use of a "new rule" of constitutional law, or even a settled rule applied in a novel setting, to apply retroactively in habeas corpus proceedings to invalidate a final state criminal conviction).

misconduct at trial, his forfeiture under California law constitutes a procedural default. *See, e.g.*, *Rich v. Calderon*, 187 F.3d 1064, 1070 (9th Cir. 1999).

**[3]** Second, Xiong's claim that the trial court violated his constitutional rights by failing to require that all the former jurors be questioned under oath also fails. "Habeas claims not raised in the petition before the district court are not cognizable on appeal." *Belgarde v. Montana*, 123 F.3d 1210, 1216 (9th Cir. 1997) (internal quotation marks omitted). In his habeas petition, Xiong did not claim that the Constitution entitled him to require the former jurors to testify, and the District Court never adjudicated such a claim. Xiong only claimed that the trial court deprived him of due process by prohibiting his attorneys from speaking to former jurors who did not want to discuss the case. Xiong did not raise this ground in his petition for habeas relief, nor has it been certified on appeal. Accordingly, Xiong's claim that the trial court violated his rights by failing to require that all former jurors be questioned under oath is not cognizable here for lack of certification. *Belgarde*, 123 F.3d at 1216.

## B. The Jury's Consideration of Extrinsic Evidence did not Prejudice Xiong.

**[4]** Extraneous influences on a jury can, under some circumstances, require the reversal of a conviction. *Parker v. Gladden*, 385 U.S. 363, 364-65 (1966). Indeed, "evidence developed against a defendant must come from the witness stand." *Fields v. Brown*, 503 F.3d 755, 779 (9th Cir. 2007); *see also Turner v. Louisiana*, 379 U.S. 466, 472 (1965) (holding that the requirement that the jury's verdict must be based on the evidence developed at trial "goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury"). Generally speaking, "[p]rivate communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmless-

ness is made to appear." *Mattox v. United States*, 146 U.S. 140, 142 (1892). However, this does not mean that all extraneous information is *per se* prejudicial; certain extrinsic contact with witnesses, such as contact involved with "passing [jurors] in the hall," may ultimately be found to be *de minimis* and not prejudicial. *See Caliendo*, 365 F.3d at 696 (citing *Gonzales v. Beto*, 405 U.S. 1052 (1972) (memorandum dissent and concurrence)). The presumption of prejudice that arises from juror misconduct, although strong, is not conclusive; "the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." *Remmer v. United States*, 347 U.S. 227, 228-29 (1954) (applying *Mattox*); *see also Caliendo*, 365 F.3d at 696.

Xiong argues that he was deprived of his right to a fair trial and an impartial jury because of juror misconduct involving the consideration of extrinsic evidence pertaining to Fue's testimony. We disagree. To the extent that controlling constitutional authority exists pertaining to this unique set of facts, we are compelled under the narrow scope of AEDPA to hold that the California Court of Appeal did not unreasonably apply clearly established Supreme Court precedent in violation of Xiong's Sixth and Fourteenth Amendment rights.

**[5]** At the outset, critical factual distinctions exist between the Supreme Court jurisprudence regarding juror misconduct and the misconduct at issue in this case. In *Mattox*, the Supreme Court held that the trial court committed reversible error by refusing to consider affidavits from the jury where the bailiff had previously remarked to the jury that the victim was the third person that the defendant killed and that the defendant had been tried for his life once before. 146 U.S. at 141-42. Moreover, in *Mattox*, the jury also considered an outside newspaper article stating that the evidence against the defendant was very strong, and that he would be lucky if he was not convicted. *Id.* at 150-52. In *Remmer*, the Supreme Court held, citing *Mattox*, that the trial court's denial of a

motion for new trial was erroneous where someone told the foreman of the jury that he "could profit by bringing in a verdict favorable" to the defendant in a tax evasion case, an affirmative effort to influence the jury. 347 U.S. at 228. *Turner* involved two deputy sheriffs who provided key testimony while also overseeing the jury during sequestration, during which time they built up a rapport with the jurors resulting in "a continuous and intimate association" with the jury throughout the trial. 379 U.S. at 473-74.[2] In *Parker*, the Court granted habeas relief after the bailiff told one of the jurors that the defendant was guilty and a "wicked fellow," and on another occasion told them that if anything were wrong with a guilty verdict, the Supreme Court would correct it. 385 U.S. at 363-66. In contrast, here, the nature and magnitude of the interference with the jury's deliberations were very different; the misconduct consisted of three jurors' brief discussions about unsolicited observations they had made of a witness, unbeknownst to him, in the normal course of their activities at the courthouse. Because the Sixth Amendment cases all involved much more significant, and in some cases, deliberate interference with the deliberation process, the nature of the misconduct here is factually distinguishable from clearly established Sixth Amendment Supreme Court precedent.

[6] Nonetheless, even if *Remmer*, *Mattox*, *Turner* and *Parker* did control, the Court of Appeal did not unreasonably apply Supreme Court precedent. The inquiry into a jury's consideration of extrinsic evidence does not end at whether misconduct occurred; upon a finding of misconduct, a *rebuttable* presumption of prejudice applies. *Remmer*, 347 U.S. at 228-29. The dissent mistakenly interprets *Turner* as holding that any such misconduct is *per se* prejudicial, but this is not the case. *Mattox* and *Remmer* teach that, although it carries a

---

[2]Sitting en banc, we have already once distinguished *Turner* from other clearly established Supreme Court precedent involving juror misconduct on the basis that the misconduct at issue in *Turner* was both "continuous [and] intimate." *Caliendo,* 365 F.3d at 695 n.2.

heavy burden, the Government may overcome the presumption of prejudice with proof that the jury's consideration of extrinsic evidence was harmless. *See Mattox*, 146 U.S. at 142; *Remmer*, 347 U.S. at 228-29.

Our dissenting colleague seeks to circumvent *Mattox*'s and *Remmer*'s limitation on the presumption of prejudice by contending that *Turner*, having been decided later in time, controls. Again, the dissent's selective logic is misguided. The Court, in *Turner*, confined its analysis to extreme cases of juror misconduct: "We deal here not with a brief encounter, but *with a continuous and intimate association* throughout a three-day trial–an association which gave these witnesses an opportunity . . . to renew old friendships and make new acquaintances among the members of the jury." 379 U.S. at 473 (emphasis). Nowhere in *Turner* does the Court even mention, let alone overrule, *Mattox* or *Remmer*. 379 U.S. 466. The Court's finding that the conduct was prejudicial was based fundamentally upon the extent and nature of the contact between the witnesses and jurors, and the fact that the Government proffered "nothing to show what the two deputies discussed in their conversations with the jurors." *Id.* at 473. Thus, the "inherent" prejudice that arose in *Turner* was not grounded in the fact of the misconduct *per se*, as our colleague contends, but the "continuous" and "intimate" nature of the association between the jurors and the prosecution witnesses. *Id.* ("And even if it could be assumed that the deputies never did discuss the case directly with any members of the jury, it would be blinking reality not to recognize *the extreme prejudice inherent in this continual association throughout the trial* between the jurors and these two key witnesses for the prosecution.") (emphasis added).

The holding in *Caliendo*, our court's most recent consideration of a petition for habeas relief due to juror misconduct, further exposes the dissent's misguided application of *Turner*, *Mattox*, and *Remmer*. 365 F.3d at 695-696. Sitting en banc, in *Caliendo*, we relied upon *Mattox* and *Remmer* as establishing

the widely accepted bright-line rule that a finding of jury mis-
conduct gives rise to a presumption of prejudice that may only
be rebutted with strong, contrary proof of harmlessness. 365
F.3d at 696 ("We and other circuits have held that *Mattox*
established a bright-line rule: Any unauthorized communica-
tion between a juror and a witness or interested party is pre-
sumptively prejudicial, but the government may overcome the
presumption by making a strong contrary showing.") (internal
citations omitted). Moreover, in *Caliendo*, we distinguished
*Turner*, as we do here, on the grounds that the particular
nature of misconduct at issue in *Caliendo* was "neither contin-
uous nor intimate," as it was in *Turner*. *Id.* at 695 n.2. Our
analysis in *Caliendo* makes clear that the dissent's attempt to
rely upon *Turner,* and to ignore *Remmer* and *Mattox*, fatally
distorts this long-established bright-line rule.

The Government conceded that misconduct occurred, and
thus, a presumption of prejudice arose. The question before us
now is whether the California Court of Appeal unreasonably
applied that presumption of prejudice in finding that the mis-
conduct was harmless. We hold that it did not. The Court of
Appeal explained, in its opinion, that Xiong was prejudiced *if*
(1) "the extraneous material was 'inherently and substantially
likely to have influenced the juror,' " or (2) given "the nature
of the misconduct and the surrounding circumstances . . . it is
substantially likely that the juror was actually biased against
the defendant." In denying Xiong's motion for a new trial
based upon jury misconduct, the Court of Appeal reasoned
that the extraneous information was not likely, objectively, to
have influenced the jury's verdict because the "observations
of Fue outside the courtroom during trial were merely cumu-
lative of what the jury witnessed on the videotaped inter-
view." In fact, Fue's credibility regarding his inability to
recall prior testimony had already been impeached at trial, to
the point where it had been deemed "comical." Ultimately,
the Court of Appeal found that any juror misconduct was
harmless because, based upon the objective facts in the
record, the extraneous evidence was merely duplicative of the

jury's findings on Fue's credibility. Moreover, the Court of Appeal rejected Xiong's argument that the jury's observations of Fue outside the court bolstered the reliability of his incriminatory statements because the jury rejected the *most incriminatory* of Fue's out of court statements—that Xiong had admitted that he shot the victim—in rejecting the personal use of a firearm enhancement.

**[7]** The Court of Appeal clearly undertook to determine whether the presumed prejudice to Xiong from the jury misconduct was harmless; it reviewed the entirety of the record and made a reasonable factual determination that Xiong was not prejudiced either by the extrinsic evidence's influence or actual bias. Accordingly, even if *Remmer*, *Mattox*, *Turner* and *Parker* controlled, the Court of Appeal did not unreasonably apply the Court's required prejudice presumption.

## II.   Ineffective Assistance of Counsel Claim

**[8]**  To prove ineffective assistance of counsel, a defendant must show that considering all the circumstances, counsel's performance was so poor that it fell below an objective standard of reasonableness, and has prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 688-89 (1984). Reviewing courts apply a "strong presumption" that the counsel's performance was within the "wide range of reasonable professional assistance." *Id.* at 689. The petitioner must show that the counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. And beyond incompetence, the petitioner must show prejudice. *Id.* at 692. Prejudice is only established if the petitioner shows a reasonable likelihood that, but for counsel's unprofessional errors, the result would have been different. *Harrington v. Richter*, 131 S. Ct. 770 (2011). "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 792. The Court of Appeal did not cite *Strickland* or explicitly apply the two part analysis from that case. Nevertheless, the Court of Appeal's adjudica-

tion of Xiong's ineffective assistance of counsel claim did not "result[ ] in a decision that was contrary to, or involved an unreasonable application of" *Strickland*. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that state courts are not required to cite or even be aware of controlling Supreme Court precedent, "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]"). Therefore, under AEDPA, we must affirm.

**[9]** During cross-examination, defense counsel asked the gang expert, based upon a hypothetical, whether he assumed that gang members in the car were acting in concert by their mere presence. At the Court of Appeal, Xiong argued that his attorney rendered ineffective assistance by eliciting the gang expert's opinion that gang members who are present at a crime scene necessarily intend to aid and abet other gang members. The Court of Appeal dismissed this claim on the merits, reasoning that Xiong had mischaracterized the gang expert's testimony to be something it was not, and further, that the expert spoke within the confines of California's prohibition on gang expert testimony about whether a defendant harbored specific intent. Xiong's counsel took a calculated risk in an attempt to elicit testimony that he was ultimately unable to elicit; instead he elicited cross-examination testimony from the prosecution's expert that was unfavorable. Under *Strickland*, this is not enough to demonstrate the requisite incompetence, nor prejudice, to trigger § 2254(d) protection. A "fairminded jurist" could conclude that the cross-examination did not constitute ineffective assistance. Accordingly, we affirm the district court and deny Xiong's petition for of habeas corpus relief for ineffective assistance of counsel.

## CONCLUSION

We hold that the California Court of Appeal's decision denying Xiong's motion for a new trial was not an objectively unreasonable application of clearly established federal law, as

determined by the Supreme Court. For the foregoing reasons, the district court's denial of Xiong's petition for habeas corpus is **AFFIRMED.**

---

NOONAN, Circuit Judge, dissenting:

Reversing a conviction of murder that had been affirmed by the Supreme Court of Louisiana, Justice Stewart writing for eight of the nine justices, stated:

> The question [before the Court] goes to the nature of the jury trial which the Fourteenth Amendment commands when trial by jury is what the State has purported to accord.

*Turner v. Louisiana,* 379 U.S. 466, 471 (1966).

Justice Stewart turned to an earlier case involving jury misconduct and stated: "What the Court said in that case is controlling here[.]" *Id*. Justice Stewart went on to repeat the earlier case's statement that "[a juror's] verdict must be based upon the evidence developed at the trial." *Id*. at 472 (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)).

Justice Stewart continued:

> The requirement that a jury's verdict "must be based upon the evidence developed at the trial" goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury . . . .
>
> In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the "evidence developed" against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's

> right of confrontation, of cross-examination, and of counsel. What happened in this case operated to subvert these basic guarantees of trial by jury.

*Turner*, 379 U.S. at 472-73.

Contamination of the jury by a particular source or to a particular degree is not the focus of the Supreme Court. Justice Stewart states the evidence before the jury must come from the witness stand in a public courtroom. No room is left for a dribble of relevant information snatched from the corridors of the court by undisciplined jurors.

At issue in our case was the credibility of Fue Xiong, the younger brother of the defendant. Fue had given a videotaped statement to the police identifying the defendant as the shooter. At the time of this statement, Fue was fifteen years old.

At his brother's trial six years later, Fue was treated as a hostile witness by the prosecution. He denied that his brother had confessed. Fue testified that he had memory problems arising from occasions where he had been knocked out. He testified that his memory deteriorated and he became confused when stressed. A key question for the jury was whether it should believe Fue on the videotape or on the witness stand.

Several members of the jury made observations relevant to the credibility of Fue. This evidence did not come from the witness stand. It came from the corridors of the court.

Juror Nine observed Fue in a hallway speaking on his cell phone several times over the two days during which he was a witness at the trial. Fue did not appear to be confused to Juror Nine. Fue "had his act together." Juror Nine stated that Fue's out-of-court demeanor was discussed by the jury during its deliberation. At a subsequent hearing, Juror Nine repudiated his statement that he could hear what Fue said on the cell

phone. He did not deny that he observed Fue. Juror Nine now declared that any reference in the jury room to observation of Fue on the cell phone came after the jury had decided that Fue's testimony was not credible.

Juror Ten and Juror Five also reported that they had observed Fue in out-of-court cell phone conversation.

On the basis of the three jurors' declarations, the defense moved for a new trial. After a hearing, the trial court stated: "Now, the misconduct in this case that I find is that the jurors discussed those phone conversations in the jury deliberation room." There was a presumption of prejudice. The prosecution had the burden of rebutting it.

The trial court went on to determine whether the prosecution had met its burden. The court first ruled that "the extraneous information was not so prejudicial in and of itself as to cause inherent bias."

The trial court then reviewed inconsistencies in Fue's courtroom testimony. In contrast, the trial court stated, "In that videotaped statement he was clear on all the essential details." The trial court then ruled that looking at the totality of the evidence there was no substantial likelihood of actual bias relative to any of the jurors."

On direct appeal, the California Court of Appeal for the Third Appellate District held:

> Our review of the record, here, leads us to concur with the trial court's determination that defendant suffered no prejudice from the misconduct in question, either objectively or based on actual juror bias.

> We agree with the trial court that, objectively, the extraneous information was not likely to have influenced the jury. We accept the trial court's observa-

tion that Fue was not a credible witness and that his memory lapses while testifying were "comical," as the transcript of Fue's testimony supports the trial court's assessment. The court contrasted Fue's demeanor in court with his videotaped interview, in which Fue was "clear on all the essential details." Although the videotaped interview is not before this court, [footnote omitted] the transcript of that interview confirms that Fue had no difficulty with recall, in marked contrast to his responses to questions at trial. Thus, observations of Fue outside the courtroom during trial were merely cumulative of what the jury witnessed on the videotaped interview and were unlikely to have influenced the jury.

*People v. Xiong*, No. C048798, 2006 WL 3033192, at *14 (Cal. Ct. App. Oct. 26, 2006).

Our review is of the opinion of the California Court of Appeal, the last reasoned judgment of the state courts.

The California appellate court confirmed what the trial court had found: Xiong's jury had before it "extraneous information" not presented to the jury in the trial. Following the trial court, the California Court of Appeal held that "objectively" the extraneous information was "not likely to have influenced the jury." *Id.* The California Court of Appeal went on to find Fue not to be a credible witness.

The majority deprive *Turner* of its force by citing *Remmer*, a decision of the Supreme Court predating *Turner* and stating in dicta that the presumption of jury misconduct is rebuttable. *See* maj. op. at 6264-65. The majority's use of precedent turns the dicta and decisions of the Supreme Court upside down. The earlier dicta in a case, moving towards the ultimate prohibition of outside influence, are now turned into a gloss on the definitive resolution of the issue. It's an odd way to read controlling authority.

Nothing in *Turner* gives approval to a court determining that information received by the jury outside the trial is permissible if the information is not too prejudicial. Nothing in *Turner* indicates that the jury's verdict may be upheld by the trial judge or the appellate court deciding the credibility of the witness as to whom the jury has information not obtained at the trial. To permit a state appellate court to validate a trial in this informal and intrusive way is to impair the integrity of the jury trial.

The state asserts that defendant's claim is barred "because there is no Supreme Court authority addressing whether and when the jury's discussion of a juror's observations outside the courtroom violates a defendant's right to due process or any other constitutional right." Inconsistently, the state moves on to address *Turner* and quotes from its holding that the jury's verdict "must be based on the evidence developed at the trial." The state does not deal with this requirement but seeks to distinguish *Turner*, saying *Turner* addressed external contact made with the jury, not the misconduct of the jurors themselves. Therefore, the state argues, *Turner* does not "squarely" face the issue in this case. But it is the state that does not squarely face *Turner*.

*Turner* holds that a jury must decide a case on the evidence presented to the jury in the courtroom. Any other source of information is excluded by what a jury trial demands. The observations of Fue and the discussion of those observations by the jury destroyed its ability to act as a jury. Contaminated, "the nature" of a trial by jury disappeared beyond retrieval, repair, or excuse. Under binding federal constitutional law as determined by the United States Supreme Court Xiong is entitled to a new trial before uncontaminated jurors.

The opinion of the court in our case cites four cases in which the United States Supreme Court found jury misconduct requiring a new trial. The opinion distinguishes these cases by saying that each involved outside influences on the

jury. That difference is correct. It is not a difference that the Supreme Court drew. It is a distinction defying the holding of *Turner* as to what constitutes the integrity of the jury.

The opinion of the court in our case copies the error of the California Court of Appeal in weighing the effect of the contamination and finding the juror misconduct harmless. That jurors themselves made out-of-court observations and discussed these observations with their fellow jurors was at least as corrosive of the process as the comments of a bailiff or a guard to ensure the integrity of the jury's deliberations. *Turner* drew a clear and bright line. California crossed it.