FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GRAHAM S. HENRY,
*Petitioner-Appellant*,

v.

CHARLES L. RYAN,
*Respondent-Appellee.*

No. 09-99007

D.C. No.
2:02-CV-00656-
SRB

OPINION

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted
October 18, 2012—San Francisco, California

Filed June 19, 2013

Before: Raymond C. Fisher, Richard C. Tallman,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Fisher

# SUMMARY[*]

## Habeas Corpus/Death Penalty

The panel affirmed the district court's denial of a 28 U.S.C. § 2254 habeas corpus petition challenging a conviction and capital sentence for murder, kidnapping, robbery, and theft.

The panel first exercised its discretion to deny petitioner's *Brady* claim on the merits, despite a procedural default issue, then held that notes the prosecution withheld were not material to the guilty verdict. *See Brady v. Maryland*, 373 U.S. 83 (1963).

The panel also held that petitioner was not diligent in securing the facts supporting his claim that photographic evidence produced by the state before trial was altered, and that some photos had been omitted and not produced during discovery. The panel further held that the state's suppression of evidence was not the cause of petitioner's failure to comply with state procedural rules so as to excuse the procedural default of this claim.

The panel denied petitioner's *Napue* claim on the merits, despite a procedural default issue, because petitioner had not established that a detective knowingly provided false testimony that the prosecution knew the testimony would be inaccurate. *See Napue v. Illinois*, 360 U.S. 264 (1959).

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel next denied a certificate of appealability as to petitioner's claim of juror misconduct when the jurors allegedly considered extrinsic evidence (two jurors performed an experiment to test one of petitioner's contentions) because petitioner could not show that the alleged misconduct had a substantial and injurious effect on the verdict.

The panel granted a motion to expand the certificate of appealability, then affirmed the district court's denial of relief as to petitioner's claim that the state courts applied an unconstitutional causal nexus test when considering mitigating evidence of petitioner's history of alcohol abuse, for lack of a substantial and injurious effect on the sentence.

The panel affirmed the denial of petitioner's claims of ineffective assistance of counsel for failing to present mitigating evidence of petitioner's childhood sexual abuse and mental illness, because the state court reasonably concluded that petitioner failed to show prejudice.

## COUNSEL

Jon M. Sands, Federal Public Defender, Robin C. Konrad (argued) and Amy E. B. Kapp, Assistant Federal Public Defenders, Phoenix, Arizona, for Petitioner-Appellant.

Thomas C. Horne, Attorney General, Kent Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Section, and Jonathan Bass (argued), Assistant Attorney General, Criminal Appeals/Capital Litigation Section, Tucson, Arizona, for Respondents-Appellees.

**OPINION**

FISHER, Circuit Judge:

Graham Saunders Henry was convicted by a jury of first-degree murder, kidnapping, robbery and theft. The Arizona trial court imposed a sentence of death in 1988 and on resentencing in 1995. After pursuing a direct appeal and state postconviction relief (PCR), Henry filed a habeas petition in federal district court. The district court denied the petition, and Henry appeals.

Henry raises four claims on appeal: (1) that the state's use of perjured testimony and its suppression of material evidence violated his constitutional rights under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1959); (2) that he was denied a fair trial because jurors engaged in misconduct by conducting an out-of-court experiment; (3) that the state court employed an unconstitutional causal nexus test when considering mitigating evidence offered at sentencing; and (4) that his resentencing counsel was constitutionally ineffective.[1] We hold that Henry's claims are either procedurally defaulted or without merit and therefore affirm the district court's denial of habeas relief.

**BACKGROUND**

Henry and his acquaintance, Vernon Foote, embarked on a road trip from California to Arizona and consumed large

---

[1] The district court certified the first and third claims pursuant to Fed. R. App. P. 22(b) and 28 U.S.C. § 2253(c). Henry seeks certificates of appealability on the second and fourth claims.

quantities of alcohol along the way. Their vehicle broke down outside Las Vegas, and they were towed to the Sportsman Lounge in Henderson, Nevada, where they continued to consume alcohol.

Henry testified that at the Sportsman Lounge, Foote informed him that an older man – Roy Estes – agreed to transport them to Arizona in Estes' truck in exchange for $50. When Estes, Henry and Foote left Henderson in Estes' truck, Henry contends he was too tired to drive, so he "took a big chug-a-lug of whiskey," crawled in the camper of Estes' truck and fell fast asleep while Foote drove the vehicle. Henry woke up about two hours later when Foote made a hard turn on a dirt road and, from the truck's camper, Henry heard Foote and Estes arguing in the truck's cab. From the truck's camper, Henry saw Foote hit Estes, stop the truck, drag Estes out of the truck over a berm to a bank near bushes and start punching Estes. Henry crawled out of the camper and saw Foote pull a knife out of Estes. Henry further testified that he ran up to the bank to help Estes and dragged him away from Foote and towards the shade, where Estes died.

The state, however, offered a different narrative at trial. The state presented evidence that Henry drove the vehicle to the crime scene. The state also presented evidence that Henry and Foote together dragged Estes up the berm to a bush, where Estes was stabbed before being dragged by Henry to a larger bush, where Estes' body was hidden from the roadway. *See State v. Henry*, 176 Ariz. 569, 574–75 (Ariz. 1993) (recounting Henry's and the state's conflicting accounts of the events).

Henry testified that after he realized Estes was dead, he started shouting at Foote and got in the truck to leave. Foote

also jumped in the truck, and they pulled away from the scene.  Shortly thereafter, Henry was pulled over for driving down the wrong side of a divided highway.  Foote and Henry quickly made an agreement that if Foote did not tell the police Henry's real name, Henry would not to tell the police that Foote had killed Estes.

Henry gave the police his fishing license with the name "Harold S. Williams" and was arrested for driving while intoxicated, blowing a .182 on a Breathalyzer.[2]  A few days later, while Henry was still detained for drunk driving, a detective addressed Henry by his real name.  Henry then told the detective that Foote had killed Estes and agreed to lead officers to the crime scene.

Henry and Foote were tried separately.  The jury convicted Henry of first-degree murder, kidnapping, robbery and theft.  Henry was sentenced to death for the murder.  Following a direct appeal and three PCR petitions in state court, Henry filed this federal habeas petition.  The district court concluded that Henry was not entitled to evidentiary development or habeas relief.

## Standard of Review

We review the district court's denial of Henry's habeas petition de novo and its findings of fact for clear error.  *See Carrera v. Ayers*, 699 F.3d 1104, 1106 (9th Cir. 2012) (en banc).  We review the denial of a request for an evidentiary hearing for an abuse of discretion.  *See Wood v. Ryan*, 693 F.3d 1104, 1112 (9th Cir. 2012).  Dismissals based on

---

[2] Henry testified that he began using this alias to avoid being linked to an outstanding arrest warrant in his name.

procedural default are reviewed de novo. *See Robinson v. Schriro*, 595 F.3d 1086, 1099 (9th Cir. 2010).

Because Henry filed his federal habeas petition after April 24, 1996, he must not only prove a violation of his constitutional rights but also satisfy the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) with respect to any claim adjudicated on the merits in state court. *See Fenenbock v. Dir. of Corr. for Cal.*, 692 F.3d 910, 916 (9th Cir. 2012). Under AEDPA, a court may not grant habeas relief with respect to any such claim unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We review the last reasoned state court decision addressing the claim in question. *See Crittenden v. Ayers*, 624 F.3d 943, 950 (9th Cir. 2010).

## DISCUSSION

## I. *BRADY/NAPUE* CLAIMS

At trial, the prosecution relied on crime scene photographs taken by the state and on footprint evidence (from testimony interpreting the state's photographs) to support its theory that Henry was an active participant in Estes' murder rather than a mere bystander to the crime. The state presented two witnesses who testified about the crime scene photographs: Detective Patterson, who investigated the crime scene and testified that he took all of the crime scene photographs, and Bernell Lawrence, who was qualified as an

expert tracker and testified about the footprints shown in the photographs.

Disputing the prosecution's evidence, Henry testified that he was asleep in the truck camper and awoke only when he heard Foote and Estes fighting.  Henry said that Foote alone dragged Estes over a sand berm to a bush and that he ran to the bush to find that Foote had stabbed Estes, at which time Henry dragged Estes away from Foote and into the shade.  At trial the defense relied on the crime scene photographs to support Henry's innocence, cautioning the jury to look at "every picture" admitted into evidence and to "look very carefully at the[] prints."

In his federal habeas petition, Henry asserted three due process violations under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1959): (1) that the state withheld notes created by his codefendant, Foote, which included a drawing of the crime scene; (2) that the state altered and suppressed photos of the crime scene; and (3) that the state knowingly presented false testimony during trial.  The first two claims assert violations of *Brady*, which "hold[s] that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."  373 U.S. at 87.  The third claim asserts a violation of *Napue*, which holds that a conviction violates a defendant's due process rights when it is obtained by the state's knowing presentation of false testimony.  360 U.S. at 269.

Henry did not present these due process claims to the state court.  The district court denied the first claim on the merits and the second and third claims as procedurally barred and on

the merits. The court issued a certificate of appealability on these issues. We address each claim in turn.

## A. Codefendant Foote's Notes

Henry states that when he requested records from the Mohave County Sheriff's Office as part of his federal habeas proceedings, he received notes Foote created, which include a drawing of the crime scene, that the state withheld during trial. Henry argues that the drawing corroborates his account of the crime because in the drawing, Foote's footprints appear on either side of Estes' tracks, while Henry's footprints extend from behind the vehicle to the bush where Estes was stabbed. Henry contends that the state's suppression of Foote's notes violated his due process rights under *Brady*.

### 1. Procedural Default

The parties disagree about whether the procedural default rule bars this claim. We need not reach this issue, however, because the merits of the claim have been fully briefed, and the district court assumed that it was not barred and reached the merits of the claim. We therefore exercise our discretion to deny the claim on the merits as permitted by 28 U.S.C. § 2254(b)(2). *See Runningeagle v. Ryan*, 686 F.3d 758, 777 n.10 (9th Cir. 2012).

### 2. Merits

To prove a *Brady* violation, Henry must show (1) that the evidence at issue is favorable to him because it is exculpatory or impeaching; (2) that it was suppressed by the state, either willfully or inadvertently; and (3) that it was material. *See Strickler v. Greene*, 527 U.S. 263, 280–82 (1999). We

assume without deciding, as did the district court, that Foote's notes are favorable and were suppressed and analyze only whether any suppression was material.

To establish materiality, Henry must show that the state's "nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id.* at 281. Henry argues that the suppressed evidence is material because its disclosure would have allowed him to present evidence corroborating his version of events and discrediting the state's theory.

We are not convinced. First, to be material under *Brady*, evidence must be admissible as evidence "or capable of being used 'to impeach a government witness.'" *United States v. Kohring*, 637 F.3d 895, 903 (9th Cir. 2011) (quoting *United States v. Price*, 566 F.3d 900, 911–12 (9th Cir. 2009)). Foote's notes, including markings on Foote's drawing that indicate the paths taken by him, Estes and Henry, appear to be hearsay. *See* Ariz. R. Evid. 801(a), (c). Henry argues that these notes would be admissible under the "statement against interest" exception.[3] However, Foote's notes and drawing reflect his efforts to show he was innocent of Estes' murder and to shift guilt to Henry. They cannot reasonably be considered a statement made against Foote's interest.

---

[3] *See* Ariz. R. Evid. 804(b)(3) (providing a hearsay exception for "[a] statement that . . . a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or *had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability*" (emphasis added)).

Second, even if they were admissible at trial, the drawing and notes taken together are *substantially* more incriminating of Henry than exculpatory. Foote's notes accuse *Henry* of killing Estes and profess Foote's own innocence. They also state, contrary to Henry's testimony at trial, that Henry was in the truck cab rather than the camper during the drive to the crime scene, and the drawing reflects this assertion as well. Although the drawing slightly undermines the state's theory of how the murder occurred, it does not corroborate Henry's. Additionally, the drawing is practically indecipherable, and its source – an individual who was also charged with the murder of Estes – is not particularly trustworthy. Therefore, this evidence has very little exculpatory value and does not present a "reasonable probability" of altering the verdict. *See United States v. Diaz-Rodriguez*, 478 F.2d 1005, 1008 (9th Cir. 1973) ("A new trial is not automatically required whenever the prosecution's files subsequently reveal[] evidence of possible utility to the defense but of unlikely weight in altering the verdict.").

Third, although Henry argues that "[t]he bulk of the State's case against Henry rested upon footprints," the footprint evidence was only one aspect of the state's case; significant other circumstantial evidence existed that supported the jury's verdict. The prosecution relied on evidence showing that Henry left the scene of the crime and failed to tell the police about the murder even after he was asked about it. The state also relied on the testimony of Estes' landlord, who suggested that Estes was not taken from his apartment willingly. It relied on evidence showing that Foote was substantially more intoxicated than Henry, tending to suggest that Foote would not have been driving, and evidence showing that Henry, who claimed he had not driven to the crime scene and had been asleep during the trip, was

able to direct the police to its precise location. It also introduced evidence showing that although Henry stated that after Foote stabbed Estes, there was "blood all over," blood was found on Henry's clothes but not on Foote's.

Furthermore, the jury did not have to believe the state's theory of the crime scene to convict Henry. The state court instructed the jury that it could convict Henry of first-degree murder either under a premeditation theory *or* under a felony-murder or accomplice theory. Therefore, even if the jury *believed* Henry's story that he did not drag Estes up the berm along with Foote, it could have convicted him under a felony-murder or accomplice theory.

In sum, Henry's *Brady* claim regarding the state's suppression of Foote's notes fails because Henry cannot establish that the allegedly suppressed evidence was material to the guilty verdict. The admissibility of the evidence is questionable, the notes are more incriminating than exculpatory and significant other evidence existed supporting the jury's guilty verdict. For these reasons, we affirm the district court's denial of this claim. We also affirm the district court's denial of an evidentiary hearing on this claim because Henry has not established that the facts he alleges, if proven, would entitle him to relief, nor has he pointed to "additional evidence that would be presented if an evidentiary hearing were held. In short, no abuse of discretion appears." *Rhoades v. Henry*, 638 F.3d 1027, 1052 (9th Cir. 2011).

## B. Alteration and Omission of Crime Scene Photos

Henry states that in 1991, during PCR proceedings, his investigator David Abbott noticed that certain negatives were missing from the rolls of film that the state had produced

upon his request.  Nearly two decades later, during Henry's federal habeas proceedings, Henry retained a photograph analysis expert, David Hill.  Hill conducted a computer-enhanced analysis of several photographic trial exhibits and concluded that the photographic evidence produced by the state before trial was altered and that some photographs had been omitted and not produced to Henry during discovery. Henry argues that the state's alleged actions violated his due process rights under *Brady*.

### 1.  Procedural Default

The district court denied this claim as procedurally defaulted and, in the alternative, on the merits.  Arizona Rule of Criminal Procedure 32.2(a) precludes post-conviction relief on any claim that could have been raised on direct appeal or in a prior PCR petition.   Henry argues that notwithstanding Rule 32.2(a), this claim would not be procedurally barred in state court under the exceptions to Rule 32.2(a) articulated in Rule 32.1(e) and (h), and thus the procedural default rule does not apply.

Rule 32.1(e) permits a defendant to bring a PCR petition if newly discovered facts exist that were diligently secured by the defendant and that "probably would have changed the verdict or sentence."  We agree with the district court that Henry was not diligent in securing the facts upon which he now relies.  His claim is not based on new evidence provided by the state but rather on new *analysis* of evidence that has been available to him for more than 20 years.  Henry has not alleged that any facts were revealed during his habeas proceedings that provided the impetus for analyzing these photographs.   Indeed, as he states in his opening brief, "[s]ince his conviction, Henry has consistently maintained

that . . . the State misrepresented and withheld crime scene photographs." He simply chose not to take any action to develop this claim until more than 20 years after trial. Therefore, no avenue for relief exists under Rule 32.1(e).

Rule 32.1(h) permits a defendant to bring a PCR petition if he can demonstrate "by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt." We agree with the district court that the evidence Henry has presented does not meet this high threshold, particularly given the ample evidence of his guilt that existed beyond the footprint and photographic evidence. Therefore, no avenue for relief exists under Rule 32.1(h).

In sum, because Henry's claim would be procedurally barred in state court under Rule 32.2(a), and he has not identified any applicable exceptions to Rule 32.2(a), his claim is procedurally defaulted.

### 2.   Cause and Prejudice

"[F]ederal habeas review of [a procedurally defaulted claim] is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Henry argues that he can "overcome any alleged default for failing to present his claim in state court because he can show cause and prejudice based on the merits of his claim itself." It is true that cause and prejudice may sometimes be established on the merits of a *Brady* claim itself, with cause

and prejudice corresponding respectively to the suppression and materiality elements of a *Brady* claim. *See Strickler*, 527 U.S. at 282 ("*In this case*, cause and prejudice parallel two of the three components of the alleged *Brady* violation itself." (emphasis added)). It is not the case, however, that a defendant is excused from failing to raise a *Brady* claim in state court every time he can prove that material was suppressed by the state and may materially affect the verdict. Rather, the state's suppression establishes cause only when it is the *reason* for his failure to develop facts in state court proceedings. *See Banks v. Dretke*, 540 U.S. 668, 691 (2004).

Here, the state's alleged suppression of omitted photographs was not the reason for Henry's failure to develop facts in state court. In 1991, Henry's investigator testified that he noticed that photographs were missing from the rolls produced by the state. In 1995, Henry himself complained that the prosecution altered and failed to produce crime scene photographs. Henry's opening brief acknowledges that he had been making these allegations "for years." It is true that Henry first had the photos analyzed in 2008, but the government's suppression did not cause that delay; Henry was clearly aware of the state's alleged *Brady* violation long before federal habeas proceedings commenced.

Contrary to Henry's contentions, *Banks*, 540 U.S. 668, and *Strickler*, 527 U.S. 263, do not hold that suppression establishes cause for a procedural default even if the defendant alleged and had evidentiary support for a *Brady* claim long before federal proceedings began. The Supreme Court has long stated that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's

procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In *Strickler*, the state's suppression established cause for the defendant's procedural default because the defendant neither knew about, nor had any evidentiary support to advance, a *Brady* claim before initiating federal habeas proceedings. *See Strickler*, 527 U.S. at 283, 286, 287. Likewise in *Banks*, the suppressed evidence did not come to light until after the petitioner initiated federal habeas proceedings. *See Banks*, 540 U.S. at 675. In both of these cases, the state's suppression was the reason for the defendants' failure to raise and develop their claims in state court, as it was not until federal proceedings that the defendants had a basis for believing that a *Brady* violation had occurred or had any evidentiary basis for such a claim.

Here, by contrast, Henry not only suspected but alleged and had evidentiary support for his claim more than a decade before commencing federal habeas proceedings. *Banks* and *Strickler* therefore do not mandate that the state's suppression establishes cause for Henry's failure to raise a *Brady* claim in state court. Henry's proposed rule, under which suppression always establishes cause, would permit a defendant who knows of wrongdoing by the state to wait to bring such a claim until he is in front of the judicial forum that he feels would be most sympathetic to his claim. This would undermine the vital purposes served by the procedural default rule, such as finality, accuracy and efficiency of judicial decisions, and it would allow criminal defendants to circumvent the most appropriate forum for adjudicating such claims – state court. *See Murray*, 477 U.S. at 490–91.

Henry has not established that the state's suppression of evidence is the reason for his failure to comply with state procedural rules. He therefore has not established cause to

excuse his procedural default, and the procedural default rule bars federal habeas review of this claim. For this reason, we affirm the district court's denial of this claim. We also affirm the district court's denial of an evidentiary hearing because the claim does not rely on "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(ii).

## C.  Knowing Presentation of False Testimony

At trial, Detective Patterson testified that he left several footprints when he walked up the berm while investigating the crime scene. Detective Patterson identified these footprints in the photographic exhibits offered at trial. The prosecution argued that, since Detective Patterson left the footprints that led up the berm, then Henry must have left the set of footprints that paralleled those left by Foote and Estes. As a result, Detective Patterson's testimony supported the state's theory that Henry and Foote together dragged Estes from the truck to the sand berm where they killed him.

Disputing Detective Patterson's testimony, Henry testified that *he* made the footprints that led up the berm when he jumped out of the back of Estes' truck. During federal habeas proceedings, Henry retained Joel Hardin to review Hill's enhanced crime scene photos and the related trial testimony. Hardin concluded:

> The footprint evidence contained in the photograph exhibits supports and generally substantiates what Henry testified to at his trial, that Henry, not Patterson, made the footprints in question.

> The footprint in the roadway that Patterson testified was made by him was, in fact, made by Henry.  Henry also made the double berm prints visible in the photographs as he ran from the road, jumped into the berm, jumped again, and entered the desert area.  The footprints in the berm are not Patterson's footprints, as he entered then left the desert area, as he testified.

Because Hill's computer-enhanced photographs and Hardin's report suggest that Henry made the footprints leading from the back of the truck, Henry argues that Detective Patterson must have knowingly presented false testimony in violation of *Napue v. Illinois*, 360 U.S. 264 (1959).

### 1.  Procedural Default

As with Henry's *Brady* claim asserting the state's suppression of crime scene photographs, this claim relies on new analysis of evidence that has been in Henry's possession for decades.  Also as with his *Brady* claim, it merely provides proof of accusations Henry has made since trial.  Thus, we are skeptical that this claim is not barred by the procedural default rule.  Nevertheless, the parties focused on the merits of Henry's *Napue* claim, as did the district court's order denying habeas relief.  We therefore exercise our discretion to deny the claim on the merits as permitted by 28 U.S.C. § 2254(b)(2).  *See Runningeagle*, 686 F.3d at 777 n.10.

### 2.  Merits

A defendant's due process rights are violated when a conviction is obtained through the knowing use of false

testimony. *See Briscoe v. LaHue*, 460 U.S. 325, 326 n.1 (1983). "A claim under *Napue* will succeed when '(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material.'" *Jackson v. Brown*, 513 F.3d 1057, 1071–72 (9th Cir. 2008) (quoting *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en banc)). The district court rejected Henry's *Napue* claim for two reasons. First, it concluded that Henry provided no evidence that Detective Patterson knew his testimony was false, as opposed to simply incorrect or in dispute. Second, it concluded that even if Detective Patterson's testimony was false, Henry failed to demonstrate that the *prosecution* knew or should have known it was false. Henry argues that the district court erred in both of these conclusions. Although he does not argue that the prosecution knew that Detective Patterson's testimony was false, he argues that Detective Patterson knew his testimony was false and that Detective Patterson's knowledge must be imputed to the prosecution.

We need not reach the question of whether Detective Patterson's knowledge must be imputed to the prosecution, because we agree with the district court that Henry has not established that Patterson knowingly provided false testimony during trial. Although Henry has provided evidence rebutting Patterson's version of the facts, he has provided no evidence that Patterson *knew* his testimony was inaccurate at the time he presented it, rather than Patterson's recollection merely being mistaken, inaccurate or rebuttable. Henry's conclusory assertion that, because Patterson must have known where he stepped while investigating the crime scene, any testimony inconsistent with the truth must be not only inaccurate but also perjured does not constitute evidence sufficient to make out a *Napue* claim.

We therefore affirm the district court's denial of this claim. We also affirm the district court's denial of an evidentiary hearing because the facts underlying this claim could have been previously discovered through diligence on Henry's part. *See* 28 U.S.C. § 2254(e)(2). Decades before his federal habeas proceedings, Henry alleged that Detective Patterson "lied" during his trial testimony. The facts underlying this claim were developed not by analyzing evidence that was produced in federal habeas proceedings, but rather by David Hill and Joel Hardin's analysis of evidence that had been in Henry's possession for years. Thus, the factual predicate for this claim could previously have been discovered through diligence.

## II.  JUROR MISCONDUCT

Henry argues that an out-of-court experiment conducted by two jurors violated his Sixth Amendment rights to an impartial jury and to a verdict based on evidence that is subject to confrontation and assistance of counsel. *See Turner v. Louisiana*, 379 U.S. 466, 471–73 (1965) (holding that a jury's consideration of extraneous evidence violates a criminal defendant's right to trial by jury).

## A.  Background

Henry first became aware of potential juror misconduct issues in 2000, when Henry's investigator interviewed several men and women who had served on Henry's jury more than a decade earlier. A juror told the investigator that two other jurors had performed an experiment to test Henry's contention that he could hear Foote and Estes arguing from the camper of Estes' truck. After driving a similar vehicle down a gravel road, these jurors concluded that Henry could

not have heard an argument occurring in the truck's cab. They shared their results with other members of the jury.

Henry asserted a claim of juror misconduct in his petition for state postconviction relief. The state trial court – Judge Steven F. Conn, the same judge who had presided over the trial – rejected Henry's claim. Among other things, the trial court questioned whether the jurors' experiment was material to the outcome of the trial: the evidence was relevant only to Henry's credibility, and even without the evidence Henry was already "one of the most inherently incredible witnesses [the court] has ever seen testify in a courtroom." The Arizona Supreme Court denied review without comment. The federal district court also rejected this claim, declined to grant an evidentiary hearing and declined to issue a certificate of appealability.

## B. Analysis

We also deny a certificate of appealability. To obtain a certificate of appealability, Henry must demonstrate that the issue is debatable among jurists of reason, that a court could resolve the issues differently or that the questions raised are adequate to deserve encouragement to proceed further. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000). He has not made this showing. Even assuming Henry could satisfy § 2254(d) – a question we need not and do not reach – Henry plainly cannot show that the alleged misconduct had a "substantial and injurious" effect on the verdict. *See Sassounian v. Roe*, 230 F.3d 1097, 1108 (9th Cir. 2000) (applying the *Brecht v. Abrahamson*, 507 U.S. 619 (1993), "substantial and injurious" standard on habeas review

of a juror misconduct claim).**[4]**   The district court therefore properly declined to certify this claim.

Supreme Court and Ninth Circuit cases finding prejudicial juror misconduct have involved far different circumstances. The Supreme Court, for instance, has found juror misconduct to warrant reversal in cases involving *extended* external influences on jurors or confirmed juror *bias* – neither of which is present here. *See Tong Xiong v. Felker*, 681 F.3d 1067, 1076–77 (9th Cir. 2012).   Similarly, the circumstances in this case are readily distinguishable from cases in which we have concluded that juror misconduct warranted a new trial.

First, the extraneous information the jury considered was not inherently inflammatory, nor had it already been excluded from trial as unduly prejudicial. *Cf. Mancuso v. Olivarez*, 292 F.3d 939, 953 (9th Cir. 2002) ("Juror misconduct cases in which habeas relief has been granted often involve the jury's receipt of information excluded from trial as unduly prejudicial such as evidence of the facts surrounding a defendant's prior conviction, bad reputation, or propensity to violate the law."); *Sassounian*, 230 F.3d at 1104, 1112 (reversing a special circumstance jury verdict where it was reached after the jury improperly considered evidence that had not been presented at trial because it had been ruled inadmissible); *Rodriguez v Marshall*, 125 F.3d 739, 744 (9th

---

**[4]** As noted, a court may not grant habeas relief with respect to any claim resolved on the merits in state court unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Cir. 1997) ("We have granted a new trial where the jury receives extraneous information that is ordinarily excluded from trial as inflammatory or unduly prejudicial."), *overruled on other grounds by Payton v. Woodford*, 299 F.3d 815, 828–29 & n.11 (9th Cir. 2002) (en banc).

Second, extraneous information is less likely to be prejudicial when, as in this case, it "merely confirmed what any reasonable juror already knew." *United States v. Bagnariol*, 665 F.2d 877, 888 (9th Cir. 1981); *see also Rodriguez*, 125 F.3d at 745 (discounting claim of prejudice when extrinsic evidence considered was within the common knowledge of most reasonable jurors). Here, the state trial court reasonably found that the extraneous information about whether a person lying in the camper of a truck could hear an argument occurring in the cab fell within the common knowledge of most jurors.

Third, Henry's credibility was already thoroughly impeached at trial, making the extraneous information cumulative. *See Tong Xiong*, 681 F.3d at 1078 (upholding as reasonable the state court's factual determination that the petitioner was not prejudiced by the jury's consideration of extrinsic evidence because a witness's credibility was so impeached at trial that extrinsic evidence further impeaching his credibility was merely cumulative).[5]

---

[5] Henry argues, under § 2254(d)(2), that the state court's adverse credibility finding was unreasonable. To the extent his argument is also applicable to our harmless error analysis, we reject Henry's contention. *See* 28 U.S.C. § 2254(e)(1) (providing that "a determination of a factual issue made by a State court shall be presumed to be correct"); *Ortiz v. Stewart*, 149 F.3d 923, 936 (9th Cir. 1998) (concluding that credibility determinations are factual issues presumed to be correct under AEDPA). In both the habeas and direct review contexts, federal courts give

Fourth, as noted earlier, the evidence supporting Henry's guilt was substantial, and the jury could have convicted him under a felony-murder or accomplice theory even if it believed Henry's story that he was in the camper of the truck and did not join Foote in dragging Estes up the berm. *See United States v. Montes*, 628 F.3d 1183, 1186, 1190 (9th Cir. 2011) (rejecting a juror misconduct claim where "the prosecution presented overwhelming evidence" of the defendants' guilt).

In sum, the jurors' alleged consideration of extrinsic evidence could not have had a "substantial and injurious" impact on the verdict. We therefore decline to issue a certificate of appealability.

---

deference to trial courts' witness credibility findings. *See, e.g.*, *Tong Xiong*, 681 F.3d at 1078 (accepting the state court's observation that a witness's "credibility regarding his inability to recall prior testimony had already been impeached at trial, to the point where it had been deemed 'comical'"); *United States v. Hanley*, 190 F.3d 1017, 1031 (9th Cir. 1999) ("[W]e must accord special deference to the trial judge's impression of the impact of the alleged misconduct." (quotation mark omitted)), *superseded by regulation on other grounds*; *Bagnariol*, 665 F.2d at 885 ("The trial judge is uniquely qualified to appraise the probable effect of information on the jury . . . . He or she observes the jurors throughout the trial, is aware of the defenses of asserted, and has heard the evidence.").

Furthermore, even considering only the facts Henry admitted at trial, the jury had good reason to question his credibility. He left the scene of a murder without reporting it to the police, provided false identification to the police and agreed not to tell the police about a murder and then reneged on that agreement once it was advantageous for him to do so.

## C.  Evidentiary Hearing

Even assuming Henry could satisfy § 2254(d), the district court did not abuse its discretion in denying Henry's request for an evidentiary hearing.  "An evidentiary hearing is not mandated every time there is an allegation of jury misconduct or bias."  *United States v. Angulo*, 4 F.3d 843, 847 (9th Cir. 1993).  Although a hearing might be useful in determining whether a defendant's allegations that jurors engaged in misconduct are true, courts may not inquire about the subjective impact of such misconduct on the jury.  *See* Fed. R. Evid. 606(b); *Fields v. Brown*, 503 F.3d 755, 778 (9th Cir. 2007) ("Juror testimony about consideration of extrinsic evidence may be considered by a reviewing court, but juror testimony about the subjective effect of evidence on the particular juror or about the deliberative process may not.").[6] Thus, we have underscored the limited utility of an evidentiary hearing in determining whether consideration of extrinsic evidence was prejudicial.  *See, e.g.*, *Montes*, 628 F.3d at 1189 ("The only question left to be answered was how [the extrinsic evidence] could have influenced the verdict, and that is a question that cannot be answered through juror testimony.").

Henry does not point to any additional evidence that could be properly pursued at an evidentiary hearing to show that the alleged misconduct had a substantial and injurious influence on the verdict.  The district court therefore did not

---

[6] Here, an evidentiary hearing to determine whether juror misconduct occurred is unnecessary.  For purposes of analyzing this claim, we assume, as did the district court, that the jury considered extrinsic evidence as Henry alleges.  Thus, the only disputed issue is the prejudice caused by the alleged misconduct.

abuse its discretion. *See Rhoades*, 638 F.3d at 1037 ("Rhoades points to no additional evidence that would be presented if an evidentiary hearing were held. In short, no abuse of discretion appears."); *Gandarela v. Johnson*, 286 F.3d 1080, 1087–88 (9th Cir. 2002).

## III. CAUSAL NEXUS CLAIM

Henry argues that the Arizona courts applied an unconstitutional causal nexus test when considering mitigating evidence of his history of alcohol abuse, in violation of his Eighth and Fourteenth Amendment rights to individualized sentencing. He contends that the state courts improperly refused to consider this evidence because of the absence of a causal connection between the evidence and the crime, violating his constitutional rights under *Lockett v. Ohio*, 438 U.S. 586, 604–06 (1978), *Eddings v. Oklahoma*, 455 U.S. 104, 113–15 (1982), *Tennard v. Dretke*, 542 U.S. 274, 283–87 (2004), and related decisions. These cases hold that requiring a defendant to prove a nexus between mitigating evidence and the crime is "a test we never countenanced and now have unequivocally rejected." *Smith v. Texas*, 543 U.S. 37, 45 (2004) (per curiam). The district court denied Henry's causal nexus claim.[7]

## A. Background

Henry presented evidence of his history of substance abuse at sentencing and resentencing. He testified that he

---

[7] The district court also denied a certificate of appealability. We grant Henry's motion to expand the certificate of appealability to encompass this claim because the claim "is one upon which reasonable jurists could disagree." *Williams v. Ryan*, 623 F.3d 1258, 1270 (9th Cir. 2010).

was a heavy drinker for decades, consuming between a fifth and a half-gallon of bourbon a day. His criminal records showed two drunk driving arrests in 1976. His probation officer reported in 1982 that his "future prognosis [wa]s poor considering his criminal activities related to excessive use of alcohol." On the day Estes was murdered, Henry had a blood alcohol level of 0.182. He testified that in 1985 he tried both Alcoholics Anonymous and medication to treat his chronic alcoholism.

Henry also presented a report by Dr. Walter Fox, M.D.[8] Dr. Fox diagnosed Henry with "alcohol dependence," concluded that a longitudinal view of Henry's life showed "a pattern of continuous heavy use of alcohol throughout the adult years" and reported that Henry's "violent behavior and criminal activities" appeared to be so entwined with his "excessive use of alcohol" that "one should consider them as existing together to both predict and explain [his] behavior." These "violent behavior[s] and criminal activities" included a robbery in 1969, a motorcycle accident in 1975, commission of involuntary manslaughter in 1977, a shooting in 1985 and the murder of Estes in 1986.

Both the state trial court and the Arizona Supreme Court treated Henry's *intoxication* at the time of the crime as a statutory mitigating factor under Arizona Revised Statutes

---

[8] The trial court appointed Dr. Fox at defense counsel's request to conduct a presentence mental health examination of Henry under Rule 26.5 of the Arizona Rules of Criminal Procedure, which provides: "At any time before sentence is pronounced, the court may order the defendant to undergo mental health examination or diagnostic evaluation. Reports under this section shall be due at the same time as the pre-sentence report unless the court orders otherwise." Ariz. R. Crim. P. 26.5.

§ 13-703(G)(1) (1997). In addition, the Arizona Supreme
Court addressed Henry's *history* of alcohol abuse as follows:

> Defendant also claims that the court
> improperly failed to find his intoxication and
> history of alcohol and drug abuse as
> non-statutory mitigating factors. With respect
> to the former, the court found that defendant's
> intoxication at the time of the homicide
> impaired his capacity to appreciate the
> wrongfulness of his conduct or to conform his
> conduct to the requirements of the law under
> A.R.S. § 13-703(G)(1). It would have been
> redundant to count this evidence again as
> non-statutory mitigation. We find insufficient
> proof of historical substance abuse, but in any
> event, this would provide no additional
> mitigation without evidence of a causal
> connection to the crime. *See State v.*
> *Medrano*, 185 Ariz. 192, 195-96, 914 P.2d
> 225, 228-29 (1996); *Bible*, 175 Ariz. at 609,
> 858 P.2d at 1212.

*State v. Henry*, 944 P.2d 57, 67–68 (Ariz. 1997). Henry
moved for reconsideration, arguing that the court's
imposition of a causal nexus requirement was
unconstitutional under *Lockett* and *Eddings*, but the court
summarily denied the motion.

   The federal district court also rejected Henry's causal
nexus claim. The district court concluded that there was no
constitutional violation because the Arizona Supreme Court
had found Henry's history of alcohol abuse unproven. It
ruled that the Arizona Supreme Court's "reference to a causal

connection represented at most an alternative basis for discounting chronic alcohol abuse as a mitigating circumstance."

## B.  Analysis

To obtain habeas relief on this claim, Henry must: (1) satisfy AEDPA, 28 U.S.C. § 2254(d); (2) prove that the Arizona courts committed causal nexus error; and (3) show that the error had a substantial and injurious effect or influence in determining the sentence. *See Stokley v. Ryan*, 705 F.3d 401, 404–05 (9th Cir. 2012) (order) (citing *Hitchcock v. Dugger*, 481 U.S. 393, 3997 (1987) (referencing harmless error in connection with the exclusion of nonstatutory mitigating evidence)).   Even assuming that Henry could satisfy the first two requirements, we affirm the denial of habeas relief because Henry has not shown that any error would have "had substantial and injurious effect or influence in determining" the sentence. *Brecht*, 507 U.S. at 623.[9]

At the time of the Arizona Supreme Court's decision affirming Henry's death sentence, Arizona law required a sentencing court to "impose a sentence of death if the court

---

[9] We also assume without deciding that Henry preserved his argument that the Arizona Supreme Court's finding of insufficient proof of historical substance abuse was an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2). *Compare AlohaCare v. Hawaii, Dep't of Human Servs.*, 572 F.3d 740, 744–45 (9th Cir. 2009) (holding that arguments raised for the first time on appeal are waived, absent exceptional circumstances), *with United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004) (holding that "it is claims that are deemed waived or forfeited, not arguments" (citing *Yee v. Escondido*, 503 U.S. 519, 534 (1992))).

finds one or more of the aggravating circumstances enumerated in subsection F of this section and that there are no mitigating circumstances sufficiently substantial to call for leniency." Ariz. Rev. Stat. § 13-703(E) (1997). Arizona law also provided that "[o]n review, the supreme court shall independently review the trial court's findings of aggravation and mitigation and the propriety of the death sentence." *Id.* § 13-703.01.

Here, the state courts found two aggravating factors: a prior felony involving the use or threat of violence under Arizona Revised Statutes § 13-703(F)(2), and an offense committed in expectation of pecuniary gain under § 13-703(F)(5). The first factor was based on Henry's 1970 conviction for the armed robbery of a Kentucky Fried Chicken at which he had been employed. The second factor was based on a finding that Henry and Foote murdered Estes to steal his truck.[10] The state courts found one mitigating factor – that Henry's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution, because of his consumption of alcohol on the day of the murder. *See id.*

---

[10] Henry minimizes the aggravating factors, arguing that they were not overwhelming because the sentencing court found that he was not the actual killer and did not intend or attempt to kill the victim. The Arizona Supreme Court, however, held that Henry was "an active, *intentional* participant in the killing." *State v. Henry*, 944 P.2d at 67; *see also State v. Henry*, 863 P.2d 861, 880 (Ariz. 1993) (holding that "the evidence that two people dragged the victim up the berm, that Henry's clothes were spattered with blood, that he drove off immediately after the stabbing, and that he failed to immediately tell officers about the victim, supports not only a finding of reckless indifference to human life, but also a conclusion that Henry was an active, intentional participant in the killing").

§ 13-703(G)(1). The trial court and the supreme court agreed that the mitigation was not sufficiently substantial to call for leniency. Accordingly, they sentenced Henry to death.

We conclude that the additional mitigating evidence of Henry's history of alcohol abuse would not have had a substantial and injurious effect on the sentence for several reasons. First, in imposing the death penalty, the Arizona courts already considered Henry's intoxication at the time of the murder as a mitigating factor. Given the similar nature of the mitigation, the additional evidence of Henry's historical alcoholism would have had minimal mitigating value. If the state courts concluded that intoxication *with* a causal connection to the crime was not sufficient to call for leniency, it is highly doubtful that they would have considered alcoholism without a causal connection to be sufficient.

Second, although evidence of a defendant's background or character is clearly relevant and probative even in the absence of a causal connection to the crime, *see Lambright v. Schriro*, 490 F.3d 1103, 1115 (9th Cir. 2007) (per curiam), state courts are free to consider the absence of a causal connection when assessing the quality and strength of such evidence, *see Schad v. Ryan*, 671 F.3d 708, 723 (9th Cir. 2011) (per curiam). Our review of the record in this particular case shows that the Arizona courts would not have given this evidence significant weight under any circumstances.

Third, this case is readily distinguishable from those in which we have treated evidence of a history of substance abuse as significantly mitigating. We have found a history of substance abuse to be substantially mitigating when it has been combined with other mitigating evidence. *See Correll*

*v. Ryan*, 539 F.3d 938, 944, 952–54 (9th Cir. 2008) (holding that the defendant's "mental health disorders, psychiatric commitments, drug abuse history, brain injury, and family dysfunction" "amounted to classic mitigating circumstances"); *Earp v. Ornoski*, 431 F.3d 1158, 1179 (9th Cir. 2005) ("If proven to be true during future evidentiary hearings, this alleged history of substance abuse, emotional problems, and organic brain damage is the very sort of mitigating evidence that 'might well have influenced the jury's appraisal of [Earp's] moral culpability.'" (alteration in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 398 (2000))); *Ainsworth v. Woodford*, 268 F.3d 868, 875, 878 (9th Cir. 2001) (holding that mitigating evidence of the defendant's "troubled childhood, his history of substance abuse, and his mental and emotional problems" "would have been extremely important to the jury in its effort to decide whether to impose the death penalty or a sentence of life in prison"). Henry's evidence, by contrast, stands alone, was similar to evidence already considered by the sentencing courts and was of limited probative value.[11]

In sum, even assuming the state courts committed causal nexus error, the error did not have a substantial and injurious effect or influence in determining the sentence. We affirm the denial of habeas relief on Henry's causal nexus claim.

## VI.  INEFFECTIVE ASSISTANCE OF COUNSEL

Henry claims that his lawyer for resentencing, Gerald Gavin, provided ineffective assistance of counsel by failing

---

[11] Indeed, Henry's historical alcoholism might have been considered aggravating as well as mitigating, depending on the perspective of the sentencing court.

to investigate and present mitigating evidence of Henry's childhood sexual abuse and mental illness.

## A. Background

The record at resentencing contained indications that Henry was sexually abused by his father. Henry's juvenile court records reported that Henry's father sexually abused him during the summer of 1961, when Henry was 15. The presentence investigation report said that Henry "engaged in a homosexual relationship with his father." During the guilt phase of the trial, Henry referred to having been "raped" by his father when he was 12 years old. These indications notwithstanding, Gavin apparently made no effort to investigate the sexual abuse issue further. Nor did Gavin draw the court's attention to the evidence already in the record during resentencing.

The resentencing record also contained indications that Henry suffered from mental health problems. The juvenile court records reported that Henry's mother tried to have him committed for psychiatric treatment in 1961. They quoted from a 1961 psychological evaluation in which Dr. P.K. Brown diagnosed Henry with "hysterical character disorder" and found "some impairment of functioning due to emotional disturbance," "hysterical defenses and psychopathic tendencies," and impulsive behavior caused by emotional or sexual stimulation. They also quoted from a 1962 psychological evaluation in which Dr. Seymour Harris diagnosed Henry with "a personality character disorder over which he has fairly good control but which occasionally leads to certain hysterical acting out behavior." The record further contained Dr. Fox's 1988 psychiatric evaluation, prepared for the original sentencing. Dr. Fox diagnosed Henry not only

with alcohol dependence, as noted earlier, but also with "Probable Antisocial Personality Disorder with Histrionic Features," although Dr. Fox also noted "superior intelligence," no indication of "abnormal perceptions," no evidence of any "substantive intellectual deterioration" and that Henry "was certainly not psychotic." Notwithstanding these indications of mental health problems, Gavin did not retain a mental health expert to provide additional mitigating evidence at resentencing.[12]

Gavin's resentencing strategy was twofold. First, he incorporated the evidence and his predecessor's arguments from the original sentencing. Gavin thus incorporated the mitigation arguments presented by defense attorney Ken Everett at the original sentencing – diminished capacity at the time of the murder due to intoxication, Henry's history of alcohol abuse, Henry's intelligence, Henry's troubled and traumatic upbringing, psychological and mental problems stemming from Henry's upbringing, Henry's compassion for other people, Henry's minor participation in Estes' murder, Henry's inability to foresee the risk to Estes' life, the cost of administering the death penalty, the preciousness of human

---

[12] Instead, Gavin tried, unsuccessfully, to obtain court approval to retain an expert to prepare a life history and "psychological read" on Henry to present a stronger case in mitigation. The trial court rejected the request, saying that it "could justify the expenditure of an expert to do a psychological evaluation [or] . . . of an investigator to go out and try to find mitigation that could be presented to the Court but as far as having an expert just to synopsize things and present it to me in a way that I can understand, I don't need to pay someone to do that. That's what I do." The court said it was "not ruling out the possibility of granting a request for the appointment of a specific expert to do a specific thing," but Gavin did not put forth any subsequent request for appointment of an expert to perform a mental health evaluation. It appears that Henry was opposed to any mental health evaluation.

life, Henry's remorse, Henry's cooperation with police and the unconstitutionality of the death penalty. Second, Gavin introduced additional mitigating evidence regarding Henry's good conduct in prison subsequent to the original sentencing, including testimony that Henry did legal research for other inmates.

In his sentencing arguments, Gavin, in addition to incorporating Everett's arguments, emphasized the disparity of sentences (Foote received at 15-year sentence following a guilty plea), ongoing doubt over whether Foote was more responsible for Estes' murder, the barbarity of the death penalty, the value of Henry's life, the unconstitutionality of the death penalty, the physical pain caused by lethal injection and the public cost of death penalty administration.

The resentencing court considered Dr. Fox's report but rejected Henry's mental health problems as a nonstatutory mitigating factor. The court then reimposed the death penalty after finding two aggravating circumstances – that Henry's 1970 conviction for armed robbery qualified as an aggravating factor under Arizona Revised Statutes section 13-703(F)(1) and (F)(2), and that Henry committed the crime in expectation of pecuniary gain under section 13-703(F)(5). The court also found one mitigating factor – that Henry's capacity to appreciate the wrongfulness of his conduct at the time of the crime was sufficiently impaired by alcohol under section 13-703(G)(1).

Henry raised penalty phase ineffective assistance of counsel in his state postconviction relief proceedings. In support of his petition for relief, Henry presented a report from Dr. Gwen Levitt, a forensic psychiatrist retained for those proceedings. Henry did not cooperate with Dr. Levitt's

evaluation, so Levitt was unable to interview Henry or
conduct any tests on him.  Dr. Levitt reviewed other evidence
in the case, however, including Henry's juvenile court records
and Dr. Fox's report.  Based on her review, Dr. Levitt opined
that Henry likely suffered from "a long standing Depressive
Disorder Not Otherwise Specified, Alcohol Dependence (in
remission), Paranoid Personality Disorder, and Antisocial
Personality Disorder."  She added that "a diagnosis of Rule-
out Delusional Disorder should also be considered."  Levitt
expressed her views "with caution" due to her inability to
interview Henry.[13]

In the last reasoned state court decision on the claim, the
state trial court rejected Henry's penalty phase ineffective
assistance of counsel claim, finding neither deficient
performance nor prejudice.  On the question of prejudice,
Judge Conn said:  "Even keeping in mind the significantly
lower standard for proving mitigation than aggravation at a
capital sentencing, the Cour[t] can say unequivocally that its
resentencing decision in this case would have been the same
even if it had been presented with the report of Dr. Levitt."

The federal district court also rejected Henry's penalty
phase ineffective assistance of counsel claim, as well as his
request for an evidentiary hearing.

## B.  Analysis

As with Henry's other claims, to obtain relief Henry must
both prove a constitutional violation and satisfy AEDPA.  To
prove a constitutional violation for ineffective assistance of

---

[13] Dr. Levitt also opined that Henry was incompetent to participate in the
state postconviction relief proceedings.

counsel, Henry must show (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy AEDPA, Henry relies on § 2254(d)(1) and (d)(2). He argues under § 2254(d)(1) that the Arizona Superior Court's decision rejecting this claim on state postconviction review was an unreasonable application of clearly established federal law. He also argues under § 2254(d)(2) that the state court's decision was based on an unreasonable determination of the facts.

### 1. Unreasonable Application of Clearly Established Federal Law

Henry has not shown that the state court unreasonably applied *Strickland*. Even assuming Gavin performed deficiently (a question we need not and do not reach), the state court's conclusion that Henry failed to show prejudice was not objectively unreasonable.[14]

"To assess prejudice, we consider the mitigating evidence that was presented along with the new mitigating evidence and reweigh all of it against the aggravating evidence to determine whether there is a 'reasonable probability' that it would have produced a different verdict." *Samayoa v. Ayers*, 649 F.3d 919, 928 (9th Cir. 2011). "The likelihood of a

---

[14] To satisfy § 2254(d)(1), Henry must show that the state court's application of *Strickland* was *unreasonable*. *See Harrington v. Richter*, 131 S. Ct. 770, 785–87 (2011). This is a high standard: "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Id.* at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792.

Henry has failed to present any additional mitigating evidence of childhood sexual abuse, life history, family background or, with the exception of Dr. Levitt's report, mental health problems. As the district court stated, "[w]hile Petitioner faults counsel for failing to obtain family background and mental health mitigation, he does not disclose such evidence or the source of such evidence to this Court, or suggest that it was available at the time of resentencing." Henry *asserts* that he has "presented evidence of significant, humanizing mitigation information that was never investigated or presented at sentencing,", but he has not actually done so.[15]

Rather, Henry proffers a mitigation case that differs from the case presented at resentencing in only two respects: (1) counsel would have emphasized the sexual abuse evidence already in the record; and (2) counsel would have presented Dr. Levitt's report. It is highly unlikely that these differences would have affected the sentence.

---

[15] Henry apparently intended to establish a factual basis for prejudice through an evidentiary hearing in federal district court. He argued in his amended habeas petition that he would "seek factual development and expansion of the record to establish this prejudice evidence at the appropriate time." He never did so, however, and *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011), now bars such a hearing unless Henry can satisfy § 2254(d), something he has not done. *See Wood v. Ryan*, 693 F.3d 1104, 1122 (9th Cir. 2012) (explaining that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits). Given that Henry has not satisfied § 2254(d), the district court did not abuse its discretion by denying Henry's request for an evidentiary hearing.

The sexual abuse evidence was already in the record, and thus presumably already considered by the resentencing court.[16] The evidence, moreover, provided few details of the alleged sexual abuse and no discussion of any effects of the abuse on Henry's long-term mental health. It therefore had little potential to affect the sentence.

Dr. Levitt's report was also unlikely to sway the sentencing court. It is true that, whereas Dr. Fox diagnosed Henry only with alcohol dependence and probable antisocial personality disorder with histrionic features, Dr. Levitt concluded that Henry also likely suffered from depressive and paranoid personality disorders, and might also suffer from delusional disorder. Unlike Dr. Fox, however, Dr. Levitt did not interview or examine Henry or perform any tests on him. Dr. Levitt thus expressed her views "with caution." The Levitt report does not appear to depart substantially from Dr. Fox's report, but even if it did so, Henry does not explain why the resentencing court would have given greater weight to Dr. Levitt, who did not examine Henry, than to Dr. Fox, who did.

In sum, the new evidence Henry proffers is sparse and of limited mitigating value. The state court thus reasonably concluded that its resentencing decision would have been the same even if it had been presented with this additional evidence. Accordingly, the state court's determination that

---

[16] This is not to say that counsel could not have done more to draw the court's attention to the evidence. In *Lambright*, 490 F.3d at 1125, we explained that a "sentencing judge cannot be expected to comb the record looking for mitigating factors." This is not a case, however, in which the evidence of sexual abuse was likely to have escaped the notice of the sentencing court.

Henry failed to establish prejudice was not an unreasonable application of clearly established federal law.

## 2. Unreasonable Determination of the Facts

Henry's contention that state postconviction review court based its denial of his penalty phase ineffective assistance of counsel claim on an unreasonable determination of the facts under § 2254(d)(2) is also without merit. Henry asserts that the state court unreasonably determined the facts when it gave Dr. Levitt's psychiatric evaluation "no weight at all" because Dr. Levitt was unable to conduct a personal interview with Henry.

This argument fails because it misreads the record. The state court said that it was "skeptical about the validity of a report done without any contact with the subject of the report," but did not say that it would give the report no weight. The court instead appears to have given the report little weight, and it was not objectively unreasonable for the court to have done so. Thus, the state court did not unreasonably determine the facts.

In sum, Henry has satisfied neither § 2254(d)(1) nor § 2254(d)(2). We therefore affirm the district court's denial of habeas relief on Henry's penalty phase ineffective assistance of counsel claim.

### CONCLUSION

We grant Henry's motion to expand to the certificate of appealability to cover his causal nexus claim and deny Henry's motion to expand the certificate of appealability to

cover his juror misconduct claim. We affirm the district court's denial of habeas relief.

**AFFIRMED.**