**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GRAHAM S. HENRY,
     *Petitioner-Appellant*,

v.

CHARLES L. RYAN,
     *Respondent-Appellee*.

No. 09-99007

D.C. No.
2:02-CV-00656-SRB

ORDER

Filed September 4, 2014

Order by Chief Judge Kozinski;
Concurrence by Judge W. Fletcher;
Dissent by Judge Tallman

## SUMMARY[*]

### Habeas Corpus/Death Penalty

The court ordered that the case be reheard en banc.

Concurring in the grant of rehearing en banc, Judge W. Fletcher wrote that the court can stay proceedings in this capital case, just as the court has in *Poyson v. Ryan*, 743 F.3d 1185 (9th Cir. 2014), and *Clabourne v. Ryan*, 745 F.3d 362 (9th Cir. 2014), to allow for the orderly and fair administration of justice, where a potentially dispositive issue in *McKinney v. Ryan*, 730 F.3d 903 (9th Cir. 2013), *to be reheard en banc* Dec. 15, 2014 – whether an *Eddings* error by the state court is structural – is potentially dispositive in this case.

Dissenting from the grant of rehearing en banc, Judge Tallman, joined by Judges O'Scannlain, Callahan, Bea, and Ikuta, wrote that by taking this capital habeas case en banc now – after certiorari has been denied by the Supreme Court and well after the deadline for en banc review by this court has passed – this court violates the Federal Rules of Appellate Procedure and the court's own General Orders, and ignores recent Supreme Court authority that has reversed this court for doing the same thing in the past.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

## ORDER

KOZINSKI, Chief Judge:

Upon the vote of a majority of nonrecused active judges, it is ordered that this case be reheard en banc pursuant to Federal Rule of Appellate Procedure 35(a) and Circuit Rule 35-3. The April 8, 2014, three-judge panel order denying Henry's motion to reconsider the panel's November 1, 2013, order denying the petition for panel rehearing shall not be cited as precedent by or to any court of the Ninth Circuit.

Judges Murguia and Friedland did not participate in the deliberations or vote in this case.

---

Judge W. FLETCHER, concurring in the grant of rehearing en banc:

On June 19, 2013, a three-judge panel of our court unanimously denied habeas relief in this capital case. *Henry v. Ryan*, 720 F.3d 1073 (9th Cir. 2013). Among other things, Henry claimed that the Arizona courts had committed an error under *Eddings v. Oklahoma*, 455 U.S. 104 (1982). The panel assumed without deciding that the Arizona courts had committed an *Eddings* error. 720 F.3d at 1091. It nonetheless denied relief on the ground that any error was harmless under the standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993). The panel did not apply a structural error standard. *Id.* at 1089. On November 1, the panel denied Henry's petition for rehearing. No member of our court called the case en banc.

On March 12, 2014, our court granted en banc review of *McKinney v. Ryan*, 730 F.3d 903 (9th Cir. 2013). A central question before the en banc court in *McKinney* will be whether *Eddings* error is structural. On March 14, two days after we granted en banc review in *McKinney*, Henry moved for full-court reconsideration of the denial of his petition for rehearing en banc in light of *McKinney*. On March 27, the judge of our court who serves as en banc coordinator entered an order, on behalf of the court, denying the motion as procedurally improper.

Then, in a motion for reconsideration addressed to the three-judge panel, Henry sought a stay of proceedings in light of the grant of en banc rehearing in *McKinney* and the grant of a stay in *Poyson v. Ryan*, 743 F.3d 1185 (9th Cir. 2014). *Poyson* is a separate *Eddings* case in which the three-judge panel had denied habeas relief and in which an en banc call had failed. Noting that the panel in *Poyson* had stayed proceedings to await the outcome in *McKinney*, Henry wrote in his motion:

> Mr. Henry is similarly situated to Mr. Poyson: Mr. Henry and Mr. Poyson both raised a causal-nexus issue in their petitions for rehearing, and their petitions for rehearing were denied within one week of each other. Mr. Poyson's panel has now amended its order denying panel rehearing and is instead staying the case pending the resolution of *McKinney*. [If the panel denies Mr. Henry's motion,] [t]he prejudice to Mr. Henry will be great—he will be executed, while Mr. McKinney or Mr. Poyson may be spared.

Motion at 7. Henry therefore asked the panel to "stay the proceedings pending the resolution of the en banc proceedings in *McKinney*." *Id.* at 8.

On April 8, the panel denied Henry's motion on the merits. Two of the panel judges joined in a published per curiam order. The third judge, the author of the panel opinion that had denied habeas relief, dissented, contending that the panel should stay proceedings to await *McKinney*. Two days later, on April 10, a judge of our court called en banc the panel's order. After an exchange of memoranda arguing for and against the en banc call, in accordance with our usual practice, a majority of the active judges on our court voted to reconsider en banc the panel's order denying the stay.

Some of our colleagues now dissent from our court's decision to rehear en banc the panel's order. They do not dispute that a potentially dispositive issue in *McKinney*— whether an *Eddings* error by the state court is structural—is also potentially dispositive in *Henry*. They nonetheless contend that we should not reconsider en banc the panel's order. With respect, our dissenting colleagues are mistaken.

Our dissenting colleagues' first contention may be disposed of fairly quickly. They contend that our court has acted improperly under our own internal procedures in voting to reconsider en banc the panel's order. They contend that the call came too late. If the calling judge had called en banc on April 10 the panel's decision denying habeas relief in Henry's *case*, the dissenters would be correct. But the calling judge did not do that. Rather, the calling judge called en banc the panel's April 8 *order* denying Henry's request to stay proceedings to await *McKinney*.

Federal Rule of Appellate Procedure 35(a)(1) provides that en banc reconsideration is appropriate when "necessary to secure or maintain uniformity of the court's decisions." Ninth Circuit Rule 27-10(b) specifically contemplates that orders issued in response to motions may be reheard en banc, as does our General Order 6.11. Our long-standing and consistent practice has been to allow en banc calls of orders, *see*, *e.g.*, *Andreiu v. Ashcroft*, 253 F.3d 477 (9th Cir. 2001) (en banc) (en banc rehearing of a panel order denying a stay of removal), even when those orders have been entered after the panel's decision on the merits of a case. *See, e.g.*, *Garcia v. Google, Inc.*, No. 12-57302, Docket Entry No. 46 (9th Cir. Mar. 6, 2014) (order issued by our en banc coordinator notifying the parties that an order of the three-judge panel "denying a stay of the panel's prior orders" had been called en banc, and noting that "[t]he *en banc* call is confined to the stay order only, and the parties should address only the order in the briefing").

Our dissenting colleagues' other contentions deserve more sustained attention.

Our dissenting colleagues contend that because the Supreme Court has denied certiorari, Federal Rule of Appellate Procedure 41(d)(2)(D) requires immediate issuance of the mandate. Dissent at 25–27. The language upon which they rely provides, "The court of appeals must issue the mandate immediately when a copy of a Supreme Court order denying the petition for writ of certiorari is filed." If taken out of context, this language means what the dissenters want it to mean. But if taken in context, it does not.

In relevant part, Rule 41 provides as follows:

**(b) When Issued.**  The court's mandate must issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later. *The court may shorten or extend the time.*

. . .

**(d) Staying the Mandate.**

**(1) On Petition for Rehearing or Motion.**  The timely filing of a petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, stays the mandate until disposition of the petition or motion, unless the court orders otherwise.

**(2) Pending Petition for Certiorari.**

**(A)** *A party may move to stay the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court.*  The motion must be served on all parties and must show that the certiorari petition would present a substantial question and that there is good cause for a stay.

> **(B)** The stay must not exceed 90 days, unless the period is extended for good cause or unless the party who obtained the stay files a petition for the writ and so notifies the circuit clerk in writing within the period of the stay.  *In that case, the stay continues until the Supreme Court's final disposition.*
>
> . . .
>
> **(D)** *The court of appeals must issue the mandate immediately when a copy of a Supreme Court order denying the petition for writ of certiorari is filed.*

Fed. R. App. P. 41 (emphasis added).

The Supreme Court has not read Rule 41(d)(2)(D) in the way our dissenting colleagues want to read it.  The Court reads it to apply only to stays of mandate entered for the sole purpose of allowing the Supreme Court to consider a petition for certiorari.  When a stay of mandate is entered for some other purpose, Rule 41(b) applies.

Our Circuit Rule 22-2(e) provides, "When the panel affirms a denial or reverses a grant of a first petition or motion [in a capital case], it shall enter an order staying the mandate pursuant to FRAP 41(b)."  Acting on behalf of the panel, the clerk's office in this case stayed the mandate pursuant to Rule 41(b), as it routinely does in all capital cases.  That stay remains in effect.

In *Bell v. Thompson*, 545 U.S. 794 (2005), and *Ryan v. Schad*, 133 S. Ct. 2548 (2013), the Supreme Court held that the mandate should have been issued after a denial of certiorari. But the Court made clear in both *Bell* and *Schad* that Rule 41(d)(2)(D) is the "default rule" applicable only to stays entered solely for the purpose of allowing time for the Supreme Court to consider a petition for certiorari. The Court wrote in *Bell*:

> In the typical case, where the stay of mandate is entered *solely* to allow this Court time to consider a petition for certiorari, Rule 41(d)(2)(D) provides the default: "The court of appeals must issue the mandate immediately when a copy of a Supreme Court order denying the petition for writ of certiorari is filed."

545 U.S. at 806 (emphasis added). The Court quoted this language from *Bell* in *Schad*. *See* 133 S. Ct. at 2550. In *Schad*, the Court explained the reason for Rule 41(d)(2)(D):

> Federal Rule of Appellate Procedure 41(d)(2)(D) sets forth the default rule that "[t]he court of appeals *must issue the mandate immediately* when a copy of a Supreme Court order denying the petition for writ of certiorari is filed." (Emphasis added.) The reason for this Rule is straightforward: "[T]he stay of mandate is entered *solely* to allow this Court time to consider a petition for certiorari." *Bell*, 545 U.S.[ ]at 806[.]

133 S. Ct. at 2550 (first and second alterations in original) (second emphasis added).

The Court's explanation of the reason for the "default rule" makes plain the scope of Rule 41(d)(2)(D). When a stay of mandate is entered "solely" for the purpose of allowing the Court to consider a petition for certiorari, the stay has served its purpose as soon as the Court denies certiorari. In that case, the mandate must issue immediately. But there is a negative pregnant in the Court's explanation. When a stay of mandate serves a purpose other than allowing the Court time to consider a petition for certiorari, the "default rule" does not apply.

If a stay is not entered for the sole purpose of allowing time for the Court to consider a petition for certiorari, the governing language is in Rule 41(b): "The court may shorten or extend the time." Immediately before the passage from *Bell*, quoted above, the Court wrote, with respect to Rule 41(b):

> While Rule 41(b) may authorize a court to stay the mandate after certiorari is denied, the circumstances where such a stay would be warranted are rare. *See, e.g.*, *First Gibraltar Bank, FSB v. Morales*, 42 F.3d 895 (CA5 1995); *Alphin v. Henson*, 552 F.2d 1033 (CA4 1977).

545 U.S. at 806.

In *First Gibraltar* and *Alphin*, cited with approval in *Bell* as examples of "rare" cases in which a stay was appropriate, the courts of appeals stayed the mandate after the Court

denied certiorari. In both cases, there was a reason for the stay independent of the Supreme Court's consideration of the petition for certiorari, based on something that had occurred before the filing of the Court's denial. In *First Gibraltar*, the Fifth Circuit had stayed the mandate before the Court's denial of certiorari not only to allow time for the Court to consider the petition for certiorari. It had also stayed the mandate "for a reason independent of the petition for certiorari"—"to permit an en banc poll." 42 F.3d at 897–98. In *Alphin*, the Fourth Circuit had stayed the mandate in order to allow the Court to consider a petition for certiorari. Four days after the Court denied certiorari, but before the order denying certiorari was received by the Fourth Circuit, that court stayed the mandate in order to decide the plaintiffs' motion for leave to file a second petition for rehearing. 552 F.2d at 1034.

In the case now before us, we have *both* of these circumstances. We have continued to stay the mandate, despite the denial of certiorari, in order "to permit an en banc poll" (*First Gibraltar*), and we have done so in order to decide a motion for reconsideration (*Alphin*). The Court wrote in *Bell* that cases such as *First Gibraltar* and *Alphin* are "rare." But they do exist, and *First Gibraltar* and *Alphin* demonstrate that the case now before us is one of them.

Our dissenting colleagues also contend that Henry has not satisfied the "extraordinary circumstances" test of *Bell* and *Schad*. *See* Dissent at 27–29. We do not believe that the "extraordinary circumstances" test of *Bell* and *Schad* applies to this case. In *Bell* and *Schad*, the only basis for the stay was Rule 41(d)(2). The fact that there are reasons to stay proceedings other than for the purpose of allowing the Supreme Court to consider Henry's petition for certiorari means that this case is governed instead by Rule 41(b), with

the result that "extraordinary circumstances" within the meaning of *Bell* and *Schad* are not required. Our dissenting colleagues nonetheless contend that "extraordinary circumstances" are required, and that *Bell* and *Schad* compel us to issue the mandate.

In *Bell*, the Court reversed the Sixth Circuit, which had withheld its mandate "without entering a formal order" for more than five months after denial of a petition for rehearing of a denial of certiorari by the Court. 545 U.S. at 796, 804. After having previously affirmed the district court's denial of habeas relief in a capital case, the Sixth Circuit issued a new opinion vacating the district court's decision and remanding for an evidentiary hearing two days before a scheduled execution and more than five months after the Court had denied the petition for rehearing of its denial of certiorari. *Bell*, 545 U.S. at 799, 801; *Schad*, 133 S. Ct. at 2551. The Court held that the Sixth Circuit had abused its discretion for three interrelated reasons.

The Court first emphasized that the Sixth Circuit had not informed the parties that it was reconsidering its decision. On the assumption that the mandate had issued, the State of Tennessee scheduled an execution date, which, "in turn, led to various proceedings in state and federal court to determine Thompson's present competency to be executed." 545 U.S. at 805. The Court wrote, "The Court of Appeals could have spared the parties and the state judicial system considerable time and resources if it had notified them that it was reviewing its original panel decision." *Id.* Further, the Court noted that the Sixth Circuit had very little basis for reversing itself and issuing a new opinion. *Id.* at 806–13. Finally, the Court concluded that the Sixth Circuit had not accorded sufficient respect to the state court judgment. The Court

wrote, "By withholding the mandate for months—based on evidence that supports only an arguable constitutional claim—while the State prepared to carry out Thompson's sentence, the Court of Appeals did not accord the appropriate level of respect to that judgment." *Id.* at 813; *see also Schad*, 133 S. Ct. at 2551 (summarizing the three reasons given in *Bell*).

In *Schad*, decided eight years later, the Court denied certiorari. After the Court's denial, Schad moved in our court to stay the mandate to await the result of a pending en banc case. *Id.* at 2550. We declined to issue a stay on that ground. *Id.* Instead, on February 1, 2013, one month before the state ultimately planned to execute Schad, we *sua sponte* construed Schad's motion as a motion to reconsider our prior denial of his motion to remand to the district court in light of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). *Id.* We then granted the motion, as we had *sua sponte* construed it, and remanded to the district court for proceedings under *Martinez*. *Id.*

The Court in *Schad* described *Bell*, and then wrote that we had "similarly" abused our discretion in *Schad*. *Id.* at 2551. The Court pointed out that "months earlier," in July 2012, we had denied a motion to remand to the district court to address the *Martinez* issue. *Id.* at 2250–51. The Court wrote that arguments made in favor of remand in February 2013 were "identical" to arguments we had rejected in July 2012. *Id.* at 2252. Further, when we decided in February 2013 not to issue the mandate, it had been ten months since the Court's decision in *Martinez*, and nearly seven months since we had initially rejected Schad's *Martinez* request. *Id.* at 2251–52.

The circumstances in this case are very different.

First, when the Court denied certiorari in *Bell* and *Schad*, there were no ongoing proceedings in the court of appeals of which the parties had notice. In *Bell*, one judge on the Sixth Circuit had decided to reread the record and had found evidence that had previously been overlooked. Based on that evidence, the three-judge panel reversed its prior denial of habeas and issued a new opinion two days before the scheduled execution. *See Bell*, 545 U.S. at 801; *Schad*, 133 S. Ct. at 2551. More than five months had elapsed between the Court's final disposition of the petition for certiorari and the Sixth Circuit's issuance of the new opinion. It is unclear precisely when the Sixth Circuit judge reread the record. But the important point, emphasized by the Court, was that during the entire more-than-five-month period after the Court's denial of the petition for rehearing of the denial of certiorari, no party was aware that the court of appeals was reconsidering its previous denial of habeas. Likewise, in *Schad*, the Court emphasized that there were no ongoing proceedings in our court when it denied certiorari. After the Court denied certiorari, the petitioner moved for a stay of the mandate, and we then remanded to the district court for a *Martinez* hearing.

By contrast, there were ongoing proceedings in this case, of which the parties were well aware, when the Supreme Court denied certiorari. We granted en banc rehearing in *McKinney* on March 12, 2014. Based on our grant of en banc rehearing in *McKinney*, Henry promptly moved for reconsideration of the panel's previous denial of his petition for rehearing, seeking a stay to await the result in *McKinney*. The panel denied the motion on April 8. A judge of our court called the panel's decision en banc on April 10, and the parties were made aware of the call. The State was asked to

provide a response to Henry's motion, which it did on May 2. The Supreme Court denied certiorari on June 9.

Second, there was substantial detrimental reliance in *Bell*, based on the lack of notice by the court that it was considering further action. The Court in *Bell* was sharply critical of the Sixth Circuit because its failure to enter a formal stay after the denial of certiorari misled the state into thinking that it could go forward with its scheduled execution date. On the assumption that there was no stay of the mandate, the parties conducted hearings in both state and federal court concerning the petitioner's competency to be executed. 545 U.S. at 805. By contrast, there has been no detrimental reliance based on lack of notice here. The state has been aware, from the beginning, of Henry's desire for reconsideration in light of our grant of en banc rehearing in *McKinney*.

Third, there were substantial and unexcused delays in *Bell* and *Schad*. In *Bell*, more than five months passed between the Court's final denial of certiorari and the issuance of the Sixth Circuit's new opinion, with no notice to the parties. In *Schad*, we remanded to the district court to address the *Martinez* issue ten months after *Martinez* was decided, and seven months after we had initially denied a motion for a *Martinez* remand. By contrast, Henry moved promptly for a stay after en banc rehearing was granted in *McKinney*. The panel's order denying Henry's motion was called en banc two days after the order was entered. The parties were notified the following day. The Supreme Court did not deny certiorari until nearly two months later.

Fourth, there were no new facts or arguments in either *Bell* or *Schad* that justified the courts' changes of heart. In

*Bell*, the court had made a mistake by overlooking evidence, and one judge investigated and evaluated the case anew based on evidence that had been previously submitted in a motion to supplement the record. 545 U.S. at 799–800. In *Schad*, we had already denied a *Martinez* motion, and no new *Martinez*-based argument caused the court to change its mind and grant the motion it had previously denied. By contrast, the argument made in Henry's motion was a new argument, based on the grant of en banc rehearing in *McKinney*. Henry argued that consistency in the application of law required that we await the outcome of our en banc rehearing in *McKinney*. This consistency argument had not been made previously. Indeed, it could not have been because en banc rehearing had not yet been granted.

Fifth, the relief awarded in *Bell* and *Schad* interrupted imminent executions. In *Bell*, the Sixth Circuit's opinion reversing its denial of habeas relief was issued two days before the scheduled execution. *Schad*, 133 S. Ct. at 2551. In *Schad*, our order remanding to the district court for a *Martinez* hearing was entered just over a month before the state ultimately planned to execute Schad. *Id.* at 2550. In both cases, the relief interrupted, at a late date, an orderly process that was then underway. By contrast, there is no scheduled execution in *Henry*, and a stay of the mandate would not interrupt an orderly process. Indeed, the converse is true. If a stay of the mandate is not granted, the orderly en banc process that is now underway would be interrupted.

In short, this case is nothing like *Bell* or *Schad*. We did not stay the mandate for five months following the Supreme Court's denial of a petition for rehearing of a denial of certiorari "without entering a formal order," with no notice to the parties. *See Bell*, 545 U.S. at 796, 805. We did not, after

five months of such silence, issue a new opinion reversing course. *See id.* at 801. We are not considering "identical" arguments that we had previously rejected. *See Schad*, 133 S. Ct. at 2552; *see also Bell*, 545 U.S. at 806 (noting that the court of appeals had already rejected "the same arguments" that it later adopted). We are not, at the last minute, disrupting a scheduled execution in which the state has already invested considerable time and resources in preparation. *See Schad*, 133 S. Ct. at 2551.

Instead, there were ongoing proceedings in *Henry*, of which the parties were well aware and in which they were fully involved, when the Supreme Court denied certiorari. There have been no substantial, unexcused delays: Henry moved for reconsideration shortly after en banc rehearing was granted in *McKinney*. The panel's order denying Henry's motion was called en banc two days after the panel's denial. The argument made in Henry's motion for reconsideration was a new argument, based on the grant of en banc rehearing in *McKinney*—an argument that had not, and could not have, been made previously. Finally, no orderly execution process has been scheduled that we are disrupting at the last minute. If anything, if a stay of mandate is not continued, the orderly en banc process currently pending would be interrupted.

Because the relevant rule is Rule 41(b) rather than Rule 41(d)(2)(D), the "extraordinary circumstances" test of *Bell* and *Schad* does not apply to this case. The vast difference between the circumstances in *Bell* and *Schad* and those in this case demonstrate that those cases do not control. Instead, *First Gibraltar* and *Alphin*, both cited with approval in *Bell*, indicate that we properly exercised our authority under Rule 41(b).

* * *

A denial of a motion for reconsideration is, in ordinary circumstances, utterly routine. But the circumstances here are far from ordinary. A critical issue in *Henry* is whether an *Eddings* error is structural, requiring automatic reversal. This issue is common to a number of pending Arizona capital cases. The *Henry* panel treated an *Eddings* error as non-structural. The panel was unanimous, holding that any *Eddings* error was harmless under *Brecht. Henry*, 720 F.3d at 1089–91. No one called the panel's decision en banc.

But then the landscape changed. We narrowly decided not to rehear en banc a second *Eddings* case, *Poyson v. Ryan*. We then voted to take en banc a third *Eddings* case, *McKinney v. Ryan. McKinney* was originally scheduled to be heard en banc in June, but we postponed the hearing until we could decide whether to take en banc yet a fourth *Eddings* case, *Hedlund v. Ryan*, 750 F.3d 793 (9th Cir. 2014).

If we hold in *McKinney* that *Eddings* error is structural, it is possible, perhaps even likely, that Henry will be entitled to a new sentencing hearing. Panels in three other Arizona *Eddings* cases have stayed proceedings to await *McKinney*. Despite the fact that in *Poyson* the en banc call failed, the *Poyson* panel has stayed proceedings. The panel in *Hedlund* has now stayed proceedings. A separate panel has stayed proceedings in *Clabourne v. Ryan*, 745 F.3d 362 (9th Cir. 2014).

The only panel that has not stayed proceedings is the *Henry* panel. If the panel's order stands, Henry will be executed. He will be executed even if we hold en banc in *McKinney* that an *Eddings* error is structural. That is, Henry

will be executed even if our law, established in *McKinney*, says that he should not be.  There is an easy and procedurally proper way to avoid this result.  We can stay proceedings in *Henry*, as we have in *Poyson* and *Clabourne*, to allow for the orderly and fair administration of our system of justice.

---

Judge TALLMAN, with whom Judges O'SCANNLAIN, CALLAHAN, BEA, and IKUTA join, dissenting from the grant of rehearing en banc:

If one is remembered for the rules one breaks, then our court must be unforgettable.  By taking this capital habeas case en banc now—after certiorari has been denied by the Supreme Court and well after the deadline for en banc review by our court has passed—we violate the Federal Rules of Appellate Procedure and our own General Orders.  We also ignore recent Supreme Court authority that has reversed us for doing the same thing in the past.  No circuit is as routinely reversed for just this type of behavior.  We ought to know better.

I

Here's what happened:  The panel issued its unanimous opinion denying federal habeas relief to Henry on June 19, 2013.  *Henry v. Ryan*, 720 F.3d 1073 (9th Cir. 2013).  Henry sought panel rehearing and rehearing en banc.  The warden filed a response.  No judge called for a vote to take the case en banc, so the panel filed a unanimous order denying panel rehearing and rehearing en banc on November 1, 2013.

The mandate should have issued on November 8, 2013, pursuant to the clear text of Federal Rule of Appellate Procedure 41(b): "The court's mandate must issue . . . 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later." Although the court may extend the time, Henry did not request a stay and none was granted.

The concurrence states that the Clerk's office, "[a]cting on behalf of the panel," stayed the mandate pursuant to Ninth Circuit Rule 22-2(e).[1] But no order staying the mandate was ever entered by the panel or by the Clerk's office. Withholding issuance of the mandate is not the same as entering a stay order. Had the parties been told a stay was entered, the State surely would have asked the Supreme Court to vacate it once certiorari was denied.

Regardless, even if a stay had been entered pursuant to the Circuit Rule, Henry's case still should have mandated within 90 days. Federal Rule of Appellate Procedure 41(d)(2)(B) states: "The stay must not exceed 90 days, unless the period is extended for good cause or unless the party who obtained the stay files a petition for the writ and so notifies the circuit clerk in writing within the period of the stay. In that case, the stay continues until the Supreme Court's final disposition." But Henry did not request and was not granted a stay extension for good cause. And he did not file a petition

---

[1] Ninth Circuit Rule 22-2(e) states: "When the panel affirms a denial or reverses a grant of a first petition or motion [in a capital case], it shall enter an order staying the mandate pursuant to FRAP 41(b)." But this language appears under the heading "Stays of Execution" and is itself ambiguous.

for writ of certiorari within 90 days.  Instead, he delayed even further by requesting and receiving a two-month extension of time from the Supreme Court.

Some five months after the denial of the petition for rehearing en banc—well after the deadline for en banc review had passed—Henry asked for full-court reconsideration. Henry's request was based on *McKinney v. Ryan*, 745 F.3d 963 (9th Cir. 2014), which had subsequently gone en banc. He hoped (and still hopes) that *McKinney* will change the circuit's law in such a way as to nullify his death sentence. His motion was denied.

Henry next petitioned for certiorari.  But he was not quite done with us.  He filed a third motion for reconsideration, this time seeking relief from the panel.**[2]**    Although the concurrence repeatedly characterizes this motion as a request to stay proceedings in light of *McKinney*, the motion was not a request for a stay.  The motion was titled "Motion for Panel Reconsideration of Order Denying Petition for Panel Rehearing in Light of *McKinney v. Ryan* and *Poyson v. Ryan*" and it requested "reconsideration of the denial of [Henry's]

---

**[2]** In addition to violating principles of comity, the motion was untimely under Ninth Circuit Rule 27-10(a)(1).  It was also improper because it amounted to Henry's third motion to reconsider the panel decision, which is prohibited under Ninth Circuit Rule 27-10(b).

petition for panel rehearing."**[3]** The motion was properly denied.**[4]** *Henry v. Ryan*, 748 F.3d 940 (9th Cir. 2014).

Then things went wrong. A judge called for a vote on whether to take the order denying the motion for reconsideration en banc. I believe that the call was improper. The court should have rejected it. It didn't.

Then, before the vote, on June 9, 2014, the Supreme Court denied Henry's petition for certiorari. *See Henry v. Ryan*, No. 13-9512, 2014 WL 1324640 (June 9, 2014) (denying certiorari). We received notice the next day. Accordingly, our mandate should have issued immediately. It didn't. We held our mandate (and hold it still).

The vote proceeded and was successful. Here we are.

## II

Under our General Orders, we cannot take a case en banc the way we have taken this case en banc. There are only seven paths to an en banc vote. Each path is described in our General Orders. First, the panel that originally receives the case may call for an en banc vote. G.O. 5.2(b). This is the only path that does not have a deadline. The next five each

---

[3] The closest Henry came to requesting a stay in the body of the motion is the following sentence: "[T]he Court's recent decision in *Poyson* that amended its previous denial of panel rehearing and stayed the case pending resolution in *McKinney* provides support for this panel to do the same." In his conclusory "wish list," he expressed his desire that the panel, after granting the motion to reconsider, would vacate his petition for panel rehearing and grant a stay pending *McKinney*.

[4] One judge dissented from the order denying the motion.

involve an event that triggers a countdown of some limited number of days for an interested judge to call for an en banc vote. Those five triggering events are:

- The receipt of notification that a party has petitioned for the case to be heard en banc initially. G.O. 5.2(a).

- The denial by the panel of a petition for rehearing en banc. G.O. 5.4(b)(2) & (c)(1).

- The denial by the panel of a petition for rehearing by the panel. G.O. 5.4(b)(3).

- Entry of an order by the panel publishing a previously unpublished disposition. G.O. 5.4(c)(3).

- The panel's substantive amendment of its previous disposition. G.O. 5.3(a).

Finally, there is a catch-all provision—General Order 5.4(c)(3). Under that provision, even when none of the five listed events occur, a judge can *sua sponte* call for an en banc vote, so long as the call is made within "seven days of the expiration of the time for filing a petition for panel rehearing or rehearing en banc." G.O. 5.4(c)(3).

Per our General Orders, these are the only seven paths to take a case en banc. This case took none of them: it was not a panel call; it was too late to fall under the catch-all provision; and the event that triggered the call here isn't any of the five triggering events described in the General Orders. Rather, it was the panel's denial of Henry's third motion to reconsider. Put simply, the call came too late. The clock had run. And our rules don't permit us to extend the en banc

window to resurrect the opportunity by taking en banc the denial of an improper motion to reconsider.

In an effort to justify the propriety of the call, the concurrence relies on General Order 6.11 and Ninth Circuit Rule 27-10(b). But neither rule is availing. By its express terms, General Order 6.11 applies only to orders issued by *motions* panels. *See* G.O. 6.11 ("Any motion or petition seeking en banc review of an order issued by a motions panel shall be processed as a motion for reconsideration en banc."). It does not expressly permit en banc review of orders, like the one here, that are issued by *merits* panels. Nor does it appear that Ninth Circuit Rule 27-10(b) applies to motions for reconsideration of merits panel orders. *See* Ninth Circuit Rule 27-10(b) ("The rule applies to any motion seeking review of a motions panel order . . ."). Even if it did, Henry is only entitled to one motion for reconsideration under the Rule. *See id.* ("A party may file only one motion for clarification or reconsideration of a panel order."). This is Henry's *third*. This court cannot call en banc an order denying a motion Henry was not even permitted to make.

The concurrence also relies on Federal Rule of Appellate Procedure 35(a)(1) to assert that en banc reconsideration is appropriate when "necessary to secure or maintain uniformity of the court's decisions." While true, the concurrence does not contend, nor does the Rule provide, that we can call orders issued by a merits panel en banc.

My reading of these rules may call into question the propriety of how the court has treated some past cases. Until *Henry*, the complications of the position promoted by the concurrence were not clear. These potential complications are glaring. If the en banc panel is only permitted to revisit

the challenged order, as the concurrence contends, then its authority would be limited to forcing the three-judge panel to reconsider its prior denial of panel rehearing. That isn't likely to achieve much; reversing the panel order denying reconsideration doesn't allow the en banc court to reach what the concurrence contends is the "critical issue" of "whether an *Eddings* error is structural, requiring automatic reversal." To reach that issue, it must do more. It must change the underlying panel opinion or go beyond the motion that triggered the call and grant Henry a stay—exceeding the concurrence's self-proclaimed and unenforceable limits as to the scope of its review. Instead, the veiled purpose of this en banc call, at least through the eyes of the concurrence, is to revisit the panel's opinion after *McKinney* is decided. But that clock has long since run.

Let's label this en banc challenge for what it is: An untimely and improper attack on the panel disposition. By taking the case en banc, we break our own rules in a way that threatens our ability to process cases. *See Hollingsworth v. Perry*, 558 U.S. 183, 196–97 (2010) (noting that a court's failure to comply with neutral rules and principles can "compromise the orderly, decorous, rational traditions that courts rely upon to ensure the integrity of their own judgments").

Critically, there is no need for such exceptional action. Contrary to the concurrence's representation, our denial of Henry's untimely petition would not necessarily result in his execution. The Supreme Court of Arizona would still have to issue a warrant of execution. That court might wait for our en banc decision in *McKinney*. Even if the warrant issued, Henry would be entitled to seek a stay and other relief from the Arizona courts, and if that failed, from the federal courts,

including ours. Granting an untimely petition for rehearing based on potential future changes in the law in unrelated cases interferes with the ordinary processes for habeas petitions, which provide adequate alternatives for a defendant to raise meritorious issues.

### III

Our General Orders aren't our only victim. We have also completely ignored controlling Supreme Court authority that tells us what we are obligated to do.

"The court of appeals must issue the mandate immediately when a copy of a Supreme Court order denying the petition for writ of certiorari is filed." Fed. R. App. P. 41(d)(2)(D). Even the author of the concurrence himself has previously acknowledged in the AEDPA context that the "initial" denial of certiorari is the "effective" and "final" denial of certiorari. *See United States v. Buckles*, 647 F.3d 883, 887 (9th Cir. 2011) (Fletcher, J.) ("Finality attaches when [the Supreme Court] . . . denies a petition for a writ of certiorari." (quoting *Clay v. United States*, 537 U.S. 522, 527 (2003))). The Supreme Court denied Henry's certiorari petition on June 9, 2014. *Henry v. Ryan*, No. 13-9512, 2014 WL 1324640 (June 9, 2014). Now, nearly three months later, we still withhold the mandate.

And by doing so, we defy the rule of law. Our defiance is well and recently practiced. Just last year, in *Ryan v. Schad*, the Supreme Court held that we abused our discretion by doing what we repeat now—failing to issue the mandate in a death penalty case following the denial of certiorari. 133 S. Ct. 2548, 2551–52 (2013). The sting of that rebuke still lingers, yet we act as though we cannot feel it.

The concurrence asserts that Rule 41(b) provides an initial avenue around our obligation to issue the mandate in this case. It doesn't. Although that rule permits the court to "shorten or extend the time" to issue the mandate, it is not a carte blanche to withhold the mandate indefinitely or to ignore more specific rules that apply here. The ability to "shorten or extend the time" is permissive. Fed. R. App. P. 41(b) (using the word "may"). A court must take affirmative action to avoid the default one-week time frame for issuance of the mandate. *See id.* To the degree that the concurrence contends that the court entered a stay, it misconstrues the record. No stay was ever entered here. Indeed, we have never issued any order concerning our mandate in this case. The default rule should have been applied with the mandate issuing on November 8, 2013.

Moreover, the concurrence cannot be correct even under its own theory that Rule 41(d)(2)(D) only applies when a stay is entered for the *sole* purpose of permitting Supreme Court review. This theory requires the court to have stayed the mandate pending the denial of certiorari and to again have stayed the mandate pending the en banc vote on whether to take the order denying reconsideration en banc. *See, e.g.*, *First Gibraltar Bank, FSB v. Morales*, 42 F.3d 895, 896–98 (5th Cir. 1995) (per curiam) (involving entry of an actual stay); *Alphin v. Henson*, 552 F.2d 1033, 1035–36 (4th Cir. 1977) (per curiam) (same). But no stays were ever entered. So, if the concurrence's legal position is right, the mandate still should have issued. The concurrence's position essentially boils down to the principle that by doing nothing (e.g., by failing to enter a stay as well as failing to issue the mandate), the court can do whatever it wants.

And Rule 41(d)(2)(D) itself does not provide an out by way of an unwritten exception for "extraordinary circumstances." The Supreme Court has twice declined to adopt that exception. *Schad*, 133 S. Ct. at 2549–51; *Bell v. Thompson*, 545 U.S. 794, 803 (2005). Instead, it has twice assumed that the exception exists, but then found its high standard unmet. *Schad*, 133 S. Ct. at 2550–51; *Bell*, 545 U.S. at 803–04. And it would have to be a high standard: "Deviation from normal mandate procedures is a power 'of last resort, to be held in reserve against grave, unforeseen contingencies.'" *Schad*, 133 S. Ct. at 2551 (quoting *Calderon v. Thompson*, 523 U.S. 538, 550 (1998)).[5]

It is hard to imagine how Henry's case could meet this standard given that it was unmet in *Schad* and *Bell*. Those cases—both capital—demonstrate that a death sentence alone does not satisfy the extraordinary circumstances standard. *See id.* at 2550; *Bell*, 545 U.S. at 803. And circuit law is no help. The few circuit cases that have arguably found extraordinary circumstances were not even habeas cases. *See Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1529–30 (9th Cir. 1989) (involving a change in statutory law that occurred before the denial of certiorari); *First Gibraltar Bank*, 42 F.3d at 896–98 (same); *Alphin*, 552 F.2d at 1035–36 (same). So they didn't involve the same "finality and comity concerns" at issue in *Schad* and *Bell*. *See, e.g.*, *Schad*, 133 S. Ct. at 2551 ("[F]inality and comity concerns, based in principles of federalism, demand that federal courts accord the appropriate

---

[5] In *Thompson,* we were reversed for *sua sponte* recalling our mandate in a capital case to revisit the merits of an earlier three-judge panel opinion denying habeas relief. The Supreme Court held that an appellate court abuses its discretion unless it acts to avoid a miscarriage of justice as defined in Supreme Court habeas corpus jurisprudence. 523 U.S. at 558.

level of respect to state judgments." (internal quotation marks omitted)).

Moreover, they all share something that Henry's case lacks—they all involved a change in statutory law that occurred before the denial of certiorari. *See Bryant*, 886 F.2d at 1529–30; *First Gibraltar Bank*, 42 F.3d at 896–98; *Alphin*, 552 F.2d at 1035–36. Those changes gave rise to extraordinary circumstances. Here, the law hasn't changed at all. Presumably, my colleagues who voted for further delay merely foresee or perhaps hope that, with *McKinney*, it will.[6]

Never before has any court deemed such a hope sufficiently extraordinary. And it can't be. The law changes all the time.[7] Nothing so ordinary could be extraordinary. So our court, by voting to rehear this case *ultra vires*, is bold indeed. Not only do we ignore *Schad* and *Bell*, but we also extend extraordinary circumstances beyond any previous authority.

---

[6] Of course, this hope assumes that Henry's case will be controlled by the en banc court's decision in *McKinney*. However, there are a number of factors that distinguish the two cases. Contrary to the concurrence's suggestion, the panel majority does not believe that there was *Eddings* error at all in Henry's case. But we will leave that discussion for another day.

[7] The concurrence asserts that "Henry's motion was a new argument." But it was not. Henry raised his *Eddings* claim in his brief, in his petition for rehearing en banc, and in his petition for certiorari. The only "new" development was our decision to grant rehearing en banc in *McKinney* and the panel's decision to stay proceedings in *Poyson*. But these developments in unrelated cases do not justify our retention of this appeal after Henry's petition for rehearing en banc has been denied and the Supreme Court has denied certiorari.

IV

Moreover, unless the en banc panel issues a formal stay of the mandate, our unorthodox actions might very well evade Supreme Court review. If the en banc panel issues such a stay, then Arizona could seek Supreme Court review of the stay. If it doesn't, then our failure to issue the mandate may escape review for an indeterminate period of time while we await oral argument and a decision from the en banc panel in *McKinney* many months from now.

V

Our court has succumbed to the temptation to hold this case, already in its third decade, even longer. Some of us may be driven by opposition to the death penalty. Or some may feel that Henry should get the benefit, if any, of *McKinney* because a third capital defendant, Poyson, was granted a stay pending *McKinney*'s resolution. *Poyson v. Ryan*, 743 F.3d 1186, 1187 (9th Cir. 2013).

Whatever they are, motivations are beside the point. We should follow the law. Instead, we lay flame to orderly case-processing rules, comity due to state court judgments, and principles of finality. "[Fire's] real beauty is that it destroys responsibility and consequences. A problem gets too burdensome, then into the fire with it." Ray Bradbury, *Farenheit 451* 109 (Simon & Schuster 2012). We should be more cautious.

I respectfully dissent.